*In re* MARRIAGE OF DANIEL R. HUCKER, Petitioner-Appellant, and SUSAN M. HUCKER, Respondent-Appellee.

Fourth District   No. 4—93—0688

Argued February 22, 1994.—Opinion filed March 10, 1994.

Allen J. Oehlert (argued), of Loewenstein, Hagen, Oehlert & Smith, P.C., of Springfield, for appellant.

Michael B. Metnick and Diane N. Cherry (argued), both of Metnick, Barewin, Wise & Cherry, of Springfield, for appellee.

JUSTICE LUND delivered the opinion of the court:

On June 29, 1993, the circuit court of Sangamon County entered an order denying a petition to terminate maintenance filed by petitioner Daniel Hucker. He now appeals, claiming the court lacked jurisdiction to extend the maintenance and that it erred in denying the petition. We disagree and affirm.

The parties' marriage was dissolved on April 3, 1991. The court's order required Daniel to pay maintenance to respondent Susan Hucker in the amount of $1,000 per month commencing March 1, 1991, with the award to be reviewed by the court after March 1,

1993. Thereafter, the court amended this provision by docket entry on July 15, 1991, providing that the maintenance award would be reviewed by the court after March 1, 1993, or at such time as Susan attained full-time employment in excess of 35 hours per week.

On August 26, 1992, Daniel filed a petition seeking termination of his maintenance obligation. In the petition, he alleged that Susan had completed her education and either was employed, or able to become employed, and earn sufficient income to support herself if she so desired. Susan filed a response to the petition, denying its allegations.

A hearing on the petition was held May 4, 1993. Both parties testified, and various documentary exhibits were admitted into evidence. Daniel was 50 years of age at the time of the hearing and Susan was 48. At the time of dissolution, they had been married almost 27 years. The marriage took place soon after Susan graduated from high school. She worked as a bank teller during the first two years of the marriage, quitting two months prior to the birth of her oldest daughter. For the balance of the marriage Susan was a homemaker, taking care of all domestic duties and the parties' two children. At the time of the hearing on the petition to terminate maintenance, Daniel, a 25-year State employee, had completed five years as a bridge inspector for the division of highways. After the parties separated, Susan attempted to find employment and, when she could not, embarked on a two-year course of study to become a respiratory therapist. She obtained certification in that field in the fall of 1992. She testified at the hearing that prior to completing her studies she had applied at two hospitals in Springfield for future positions in her chosen profession.

In August 1992, Susan was involved in an automobile accident in which she broke her leg, injured her kneecap and injured her back. She stated she had not filed a personal injury action and wanted to first get her leg healed. She was on crutches for seven weeks following the accident. After the fracture healed, she had physical therapy three times per week, continuing to the time of the hearing. She stated that she is in constant pain and on pain medication 24 hours a day. Her knee aches constantly, is swollen, and, if she is on her feet for any length of time, the knee becomes more swollen and she has difficulty walking. Treatment for her back has consisted of sitting on a moist heating pad three times a day. She has been unable to work as a respiratory therapist because she cannot meet the necessary physical demands. As a therapist, she would have to work in all areas of the hospital. She would have to climb stairs, walk and, in cases of emergency, run. She is currently under the care of an orthopedic

surgeon who, in March 1993, performed arthroscopic surgery on her knee. He told her at that time she was unable to work, and he gave her a letter to that effect. Susan admitted that she knew of openings for part-time work in her field in St. Louis, but she had not applied for them because she is unable to work.

While injured and unable to work, Susan was taking additional classes in the nursing program at Lincoln Land Community College. She drove to Springfield three times per week for classes. Her professors allowed her to sit with her leg elevated during class to alleviate pain.

In addition to maintenance paid by Daniel, Susan's monthly income consisted of $175 rent income for an apartment over her garage and approximately $266 rent from marital farmland. Under terms of the dissolution judgment, Susan was to receive this farm income through the end of 1993, at which time Daniel, who was awarded the farm, would receive all farmland income. In her affidavit of income and expenses, Susan showed a monthly deficit of $546. She testified she had borrowed $35,000 against the marital home. This home had been awarded to her in the judgment of dissolution. Some of this was spent on dental implants, needed for health reasons, and some paid off the debt on her car. At the time of the hearing, she had about $6,500 left. She stated she had been using these funds to make up for the shortage in her monthly income.

Susan testified that while her daughters were in college she wanted to get a job to help with the expense, but that Daniel discouraged her from doing so. She had a good possibility of a job at a weigh station with the State Police, but Daniel told her he had spoken with the captain of the State Police and told him that he did not think Susan should have the job. She wanted to take classes, but Daniel discouraged her, saying it was too expensive and she should wait. The only work she did outside the home after her daughters were born was to occasionally help a friend who owned a pharmacy.

Daniel was remarried at the time of the hearing. He had recently moved into a new house he had built after the dissolution. He estimated the value of the house at $100,000, with an $83,000 mortgage. In addition, he had borrowed a substantial sum of money from his mother for the down payment and other expenses. Daniel's affidavit showed his total monthly net income, after deduction for Susan's maintenance award, was approximately $2,600. This consisted of his salary (increased approximately $220 per month since the marriage dissolution), a Veterans' Administration disability benefit, and farm income. He had monthly expenses approximating his income.

Daniel denied discouraging Susan's working outside the home or taking classes during their marriage. He stated that during the last few years of their marriage he had encouraged her obtaining employment.

On June 29, 1993, the trial court entered an order denying the petition to terminate maintenance, finding that Susan was still in need of maintenance and stating that the maintenance award would be reviewed in one year.

Before addressing Daniel's arguments on appeal, we are compelled to comment upon the statement of facts contained in his initial brief. Supreme Court Rule 341(e)(6) (134 Ill. 2d R. 341(e)(6)) requires an appellant's brief to set forth the "facts necessary to an understanding of the case, stated accurately and fairly without argument or comment." The statement of facts in Daniel's brief is anything but that. It contains numerous half-truths and cannot, under any reasonable interpretation, be characterized as fair and accurate.

■ Daniel argues the trial court lacked jurisdiction to extend Susan's maintenance beyond March 1, 1993, because Susan failed to file a petition to extend maintenance prior to that date. Susan concedes she did not file such a petition, but argues that none was necessary. We find Daniel's argument is without merit. Although Daniel cites the case of *Rice v. Rice* (1988), 173 Ill. App. 3d 1098, 528 N.E.2d 14, in support of his argument, his reliance on that case is misplaced. In *Rice*, the trial court awarded maintenance to the wife for a period of 42 months. No jurisdiction to review the award at the end of that period was specifically reserved in the order. The wife filed a petition to extend the maintenance after it had terminated.

The *Rice* trial court found it had no jurisdiction to extend maintenance under those circumstances. The appellate court affirmed, but stated that if a petition to extend maintenance is filed prior to the end of the maintenance period, the trial court would have authority to extend the award, even if the original maintenance order did not reserve jurisdiction to review the award. *Rice*, 173 Ill. App. 3d at 1102-03, 528 N.E.2d at 17; see also *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 597 N.E.2d 847, *appeal denied* (1992), 147 Ill. 2d 625, 606 N.E.2d 1225 (where this court, citing the *Rice* case as authority, held that the trial court had authority to extend maintenance where a petition requesting that relief was filed within the maintenance term, even though the original maintenance order set the maintenance for a four-year period and did not reserve jurisdiction to review it).

Daniel is under the misconception that Susan's maintenance award expired March 1, 1993. However, in contrast to the *Rice* and

*Carpel* cases, the trial court's order in the instant case did not provide that maintenance would terminate on March 1, 1993; it merely stated the award would be reviewed after that date.

■ Daniel also argues the trial court's order denying his petition to terminate Susan's maintenance was against the manifest weight of the evidence, an argument with which we also disagree. His principal contention supporting this argument is that Susan had not found employment, although she was obliged to do so.

The determination to modify or terminate maintenance lies within the sound discretion of the trial court and will not be disturbed by a reviewing court absent an abuse of that discretion. (*In re Marriage of Waldschmidt* (1993), 241 Ill. App. 3d 7, 10, 608 N.E.2d 1299, 1301.) Under section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (Ill. Rev. Stat. 1991, ch. 40, par. 510(a)), maintenance may be modified only upon a showing that there has been a substantial change in circumstances. (*Rice*, 173 Ill. App. 3d at 1100, 528 N.E.2d at 15.) Although section 510(a) of the Act refers only to modification, that section has been read as allowing termination. (*Ingrassia v. Ingrassia* (1987), 156 Ill. App. 3d 483, 488, 509 N.E.2d 729, 733-34.) The party seeking modification of maintenance has the burden of showing there has been a substantial change in circumstances. (*In re Marriage of Logston* (1984), 103 Ill. 2d 266, 287, 469 N.E.2d 167, 176; *Rice*, 173 Ill. App. 3d at 1100, 528 N.E.2d at 15.) In making its determination whether to modify maintenance, the trial court is to consider the same factors it considered when making the initial award of maintenance. (*In re Marriage of Pedersen* (1992), 237 Ill. App. 3d 952, 956, 605 N.E.2d 629, 633.) Those factors are set forth in section 504(b) of the Act (Ill. Rev. Stat. 1991, ch. 40, par. 504(b)).

A spouse who receives maintenance is under an affirmative obligation to seek appropriate training and skills in order to reach the goal of becoming financially independent. (*In re Marriage of Martin* (1992), 223 Ill. App. 3d 855, 860, 585 N.E.2d 1158, 1162, *appeal denied* (1992), 145 Ill. 2d 635, 596 N.E.2d 630.) A failure to make good-faith efforts toward this goal, following a reasonable time frame during which this objective should have been accomplished, may be grounds for modification of maintenance. (*Martin*, 223 Ill. App. 3d at 860, 585 N.E.2d at 1162; *In re Marriage of Courtright* (1989), 185 Ill. App. 3d 74, 77, 540 N.E.2d 1027, 1029.) However, this factor is only one of the many factors the trial court is to consider in its determination whether maintenance should be awarded and, if so, its duration. *Carpel*, 232 Ill. App. 3d at 830, 597 N.E.2d at 864.

In the instant case, Susan had completed the necessary training

and received certification as a respiratory therapist. She had begun making inquiries into available employment opportunities when she was involved in an automobile accident, injuring her knee and back. She testified that since the accident she had surgery on her knee, was in constant pain, and was taking physical therapy. Her doctor had recently told her she was unable to work. She also testified that she was currently unable to meet the physical demands of a respiratory therapist's job. Although there were job opportunities in her field in St. Louis, she had not sought them out because of her physical limitations. The trial court was not required to compel Susan to actively seek employment when she would be unable to fulfill the job requirements. If there are any doubts as to Susan's credibility on this issue, that determination was best left to the trial court.

For the reasons stated, the order of the trial court denying the petition for termination of maintenance is affirmed.

Affirmed.

GREEN and STEIGMANN, JJ., concur.