*In re* MARRIAGE OF CYNTHIA HASSIEPEN, f/k/a Cynthia Von Behren, Petitioner-Appellant, and KEVIN M. VON BEHREN, Respondent-Appellee.

Fourth District    No. 4—94—0258

Argued November 14, 1994.—Opinion filed February 23, 1995.

560

Walter H. Kasten (argued), of Springfield, for appellant.

Bruce A. Beeman and Stephen M. Osborne (argued), both of Beeman Law Offices, of Springfield, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In January 1991, Cynthia Hassiepen, petitioner, filed a petition to increase child support payments she received from Kevin Von Behren, respondent, for support of their three children. In May 1991, Kevin filed a petition to decrease those payments. In June and July

1993, the trial court held hearings on these motions and ultimately increased Kevin's child support payments. Cynthia also filed a petition requesting the court order Kevin to pay her attorney fees. After a hearing in January 1994 on this motion, the court awarded Cynthia a small portion of the requested amount.

Cynthia appeals, arguing that the trial court erred by (1) increasing Kevin's child support obligation to only $1,500 per month, and (2) awarding her only a small portion of her attorney fees. We agree with both of these contentions and therefore reverse and remand both issues to the trial court.

## I. BACKGROUND

In October 1984, Cynthia and Kevin were granted a dissolution of their seven-year marriage. During their marriage, they had three children, Kevin (born December 1978), Jacob (born August 1980), and Joshua (born October 1981). Cynthia was awarded custody of the children, and Kevin was ordered to pay $400 per month in child support. By agreement of the parties, the amount of child support was increased to $500 per month in June 1987.

In 1988, Cynthia married John Hassiepen, an attorney with Caterpillar. Cynthia and John live in Peoria with Cynthia's three children and their son Andrew, born in early 1991. In 1989, Kevin married Brenda, and they live in Springfield and have one child together.

The voluminous record demonstrates that relations between Cynthia and Kevin after the dissolution of their marriage have been strained. In January 1991, Cynthia filed a petition to increase the child support payments to $950. At this point, Cynthia's husband, John, was acting as her attorney. Kevin responded by filing a petition in May 1991 to decrease the child support payments. In June 1991, Cynthia amended her petition seeking an increase in child support, asking that Kevin be required to pay $1,475 per month in child support. In July 1991, Kevin filed a petition requesting the trial court to review the custodial arrangement and change custody by appointing him custodial parent of their three children.

In May 1993, the trial court held several hearings regarding custody of the children and decided not to change the custodial parent; instead, the court altered the visitation schedule. Then, in June and July 1993, the trial court held several additional hearings regarding child support payments. The following is a summary of the evidence presented at those hearings.

In 1985, Kevin began living with Brenda. At that time, Kevin ran a bait shop and archery business. In September 1985, Kevin was discharged in bankruptcy, but continued to attempt to run these

businesses. Because these businesses continued to cause financial difficulties, he and Brenda decided to start an electrical contracting business, called Von Behren Electric. Kevin started this business with only an old pickup truck and a drill which his father had given him. Brenda's credit cards were used to purchase other business supplies and materials. Brenda handled the general office work, including taking phone calls, picking up mail, preparing bills, banking, and preparing bids. Kevin performed the electrical contracting work. When they began the business, Brenda was also a court reporter, and she continued to receive income from this job for about two years thereafter.

After Kevin and Brenda began living together, they opened a joint checking account, which they used for all personal and business transactions. They did not pay themselves wages or a salary, but instead withdrew money from the account for both personal or business reasons. They put any money received into this joint account. At the time of the 1993 hearings, they continued this practice for handling money.

Von Behren Electric proved to be quite prosperous. In November 1991, Kevin and Brenda incorporated Von Behren Electric upon the advice of their accountant, Carol Nelson. Nelson kept track of their expenses, separating all their transactions into personal and business categories. She also prepared a yearly profit and loss statement for the business. After incorporating, Kevin and Brenda paid themselves an annual salary of $12,000 each. However, if they needed any additional money for personal expenses, they would merely withdraw this from the joint checking account.

The 1992 profit and loss statement for Von Behren Electric showed a net income of approximately $134,000 made on gross revenues of slightly over $500,000. In 1985, before Kevin was released in bankruptcy, he acquired a piece of property which he later commercially developed after the electrical contracting business began to prosper. The 1992 profit and loss statement for this property, under the name of Von Behren Properties, showed an additional net income of over $53,000. Kevin and Brenda's joint 1992 Federal tax return showed an income of about $23,000 and rental income of around $43,000, for a total of $66,000. However, at the time of the hearings, Kevin and Brenda had not yet filed their 1992 tax return and had only completed it a few days earlier. Furthermore, Kevin had not filed a tax return for years 1989, 1990, and 1991 until May 1993, and owed taxes and penalties for those years.

The evidence revealed that Cynthia was a homemaker, having last worked outside the home in 1991. Since 1991, when Andrew was born, Cynthia has stayed home to raise her four children.

In August 1993, after the hearings regarding child support, Cynthia filed a second-amended petition to increase the amount of child support based upon the evidence presented at trial. She sought to have the court assess child support in the statutory amount of 32% of Kevin's net income (see 750 ILCS 5/505(a)(1) (West 1992)). Additionally, in June 1993, the trial court filed a judgment against Cynthia and her husband, John, finding them in contempt of court for wilfully denying Kevin visitation on Memorial Day weekend in 1991 and assessing them costs for Kevin's related expenses.

In October 1993, the trial court made the following findings regarding child support: (1) Kevin presented no evidence to decrease child support and thus did not pursue this matter; (2) Kevin began his electrical business in 1987 and his income and net worth have increased substantially since then; (3) Kevin's ability to pay increased child support has increased; (4) the children's needs have substantially increased; (5) Cynthia's evidence on the children's economic needs was excessive and questionable, at times being directly contradictory or conflicting; (6) Brenda became involved in the electrical business with Kevin in 1987; (7) Kevin and Brenda commingled their liquid assets for a substantial portion of their relationship together; (8) Brenda was substantially and integrally involved in the Von Behren Electric, Inc., business and other enterprises and shared in the economic results of the businesses; (9) their business relationship is an equal partnership; (10) throughout Kevin's business career, he commingled his business and personal expenses and accounts; (11) Kevin did not incorporate to avoid child support; nonetheless, the corporate veil of Von Behren Electric, Inc., should be broken and the corporation shall be considered Kevin's and Brenda's alter ego; (12) no significant difference exists in how Kevin operates Von Behren Electric, Inc., compared to his prior habits of commingling of accounts and expenses, lack of corporate structure, and his management style; (13) Kevin's business recently had been good, but his future income is uncertain; (14) Cynthia's actions contributed substantially to the delay in resolving this matter; and (15) Kevin's net income for child support purposes, including consideration of corporate income, is approximately $4,774 per month.

Based upon these findings, the trial court (1) denied Kevin's petition to decrease or suspend child support; (2) increased child support to $1,500 per month beginning November 1993 and retroactive to September 1993, with the two-month arrearage to be paid by March 1994; and (3) denied Cynthia's request for attorney fees. After a hearing on the parties' post-trial motions, the court supplemented its October 1993 order by a docket entry which stated that Kevin's "net

564

income for purposes of child support was determined by considering approximately 50% of [Kevin's] net income from his 1992 corporate and individual Federal and State income tax returns." Also, the court vacated its order regarding attorney fees and set a hearing date on this matter.

In January 1994, the trial court held a hearing regarding Cynthia's request for attorney fees. At the hearing, Cynthia's counsel presented evidence that Cynthia accumulated attorney fees of $35,165.50 after she retained him as counsel for this matter in March 1992. After hearing all of the evidence, the court ordered Kevin to pay $1,693.75 of Cynthia's attorney fees. Cynthia appeals both of the trial court's decisions regarding the increase in child support and her attorney fees.

## II. ANALYSIS

### A. *Child Support*

#### 1. Standard of Review

Section 505 of the Illinois Marriage and Dissolution of Marriage Act (Act) covers the determination of a parent's child support obligation, establishing statutory guidelines for a parent's obligation unless the trial court finds reason to deviate from the guidelines. (750 ILCS 5/505(a) (West 1992); *In re Marriage of Lee* (1993), 246 Ill. App. 3d 628, 642-43, 615 N.E.2d 1314, 1325.) However, modification of a child support obligation must be based "upon a showing of a substantial change in circumstances." (750 ILCS 5/510(a) (West 1992).) Also, the determination of whether to modify a support obligation lies within the sound discretion of the trial court, and this decision will not be overturned on appeal absent an abuse of that discretion. *In re Marriage of Burris* (1994), 263 Ill. App. 3d 495, 498, 636 N.E.2d 71, 73.

#### 2. Were Kevin and Brenda Business Partners?

Cynthia first argues that the trial court erred in finding that Kevin and Brenda were partners in Von Behren Electric and Von Behren Properties. Essentially, Cynthia claims that Kevin is sole owner of the two businesses and that Brenda is one of his employees. As a result, Cynthia contends that all of the net income from Von Behren Electric and Von Behren Properties should be accorded to Kevin, not just half of this income as determined by the trial court based upon its finding that a partnership existed. Kevin responds that the court did not abuse its discretion by finding a partnership.

The existence of a partnership is a question of the parties' intent and is based upon all the facts and circumstances surrounding the formation of the relationship at issue. (*In re Marriage of Perlmutter* (1992), 225 Ill. App. 3d 362, 369, 587 N.E.2d 609, 614.) As a result, the

formalities of a written partnership agreement are unnecessary to prove the existence of a partnership. (*Seidmon v. Harris* (1988), 172 Ill. App. 3d 352, 357, 526 N.E.2d 543, 546; *Laroia v. Reuben* (1985), 137 Ill. App. 3d 942, 946, 485 N.E.2d 496, 499.) A partnership arises when (1) parties join together to carry on a venture for their common benefit, (2) each party contributes property or services to the venture, and (3) each party has a community of interest in the profits of the venture. *Kennedy v. Miller* (1991), 221 Ill. App. 3d 513, 521, 582 N.E.2d 200, 205; *In re Marriage of Kamp* (1990), 199 Ill. App. 3d 1080, 1082, 557 N.E.2d 999, 1001.

Section 6(1) of the Uniform Partnership Act defines a partnership as "an association of two or more persons to carry on as *** a business for profit." (805 ILCS 205/6(1) (West 1992).) Further, the receipt of a share of the business profits is *prima facie* evidence that a person is a partner in the business. (805 ILCS 205/7(4) (West 1992).) The party asserting the existence of the partnership carries the burden of proving its existence. (*Sajdak v. Sajdak* (1992), 224 Ill. App. 3d 481, 487, 586 N.E.2d 716, 720.) Because the existence of a partnership is a question of fact, a reviewing court will not overturn the trial court's determination of this question unless it is against the manifest weight of the evidence. *Sajdak*, 224 Ill. App. 3d at 487, 586 N.E.2d at 720.

Cynthia points to the following facts which she claims support a conclusion that Kevin and Brenda were not partners in the Von Behren businesses: (1) prior to their marriage, Kevin and Brenda filed separate tax returns, in which Kevin reported all of the business income and Brenda reported only her court reporting income; (2) when they filed joint tax returns after their marriage, Brenda did not report any income from either business on her separate tax schedules; (3) Kevin put "sole proprietorship" on the top (in bold letters) of his tax return schedules for 1988 through 1991; (4) no written partnership agreement exists; (5) they never filed a partnership tax return; (6) they never informed Nelson, their accountant, that they were a partnership; (7) Brenda's name is not on any of the legal documents or deeds for the real estate known as Von Behren Properties; (8) all business vehicles are titled in Kevin's name; (9) no business signs indicated that either business was a partnership; (10) business cards for Von Behren Electric, Inc., state "Kevin Von Behren/Owner"; and (11) when Kevin answered interrogatories for this case, he stated that he was sole owner and that Brenda worked for him.

Kevin asserts that the following facts support his claim that he and Brenda were partners in the Von Behren businesses: (1) in 1987, he and Brenda verbally agreed to "start an electrical contracting

business to see if they could make some money out of it"; (2) Brenda's credit cards were used to obtain credit when they began the electrical business because he had no credit available after going through bankruptcy; (3) all money earned by the electrical business was put into their joint checking account; (4) neither he nor Brenda received wages from the electrical business; (5) Brenda gave up her court reporting career to work full-time for the business; (6) Brenda was not paid separately for her work for the business; and (7) Brenda performed integral duties for the business, including paying all bills, managing the business, coordinating employees and equipment, handling the payroll, taking phone calls, and dealing with other important matters. Kevin further claims that the lack of proper written formalities for their electrical business does not negate their original agreement to "start a business and make some money together." Also, Kevin asserts that Von Behren Properties was handled in the same manner as the electrical business, and thus should be treated as a similar entity.

After reviewing the evidence, the trial court found that Brenda was involved with Kevin in the electrical contracting business when it began in 1987. Also, the court noted that "Brenda was substantially and integrally involved in the Von Behren electrical business and other enterprises and shared in the economic results of the business[es]," and concluded that their business relationship was a partnership. Based upon our review of the record, we cannot say that this conclusion was against the manifest weight of the evidence.

■ Obviously, Kevin and Brenda are not sophisticated business people. While the trial court should consider the absence of written formalities, that is only one factor to consider when determining if a partnership exists. The trial court must review all facts and circumstances surrounding the formation of the business. In this case, both Kevin and Brenda provided services for the businesses, Brenda provided credit for the initial operations of the business, and Kevin contributed assets to the business. Also, all the money earned by the business was put into their joint account and used for reinvestment in the businesses or for their personal needs. Accordingly, we conclude that the trial court did not err by finding that Kevin sustained his burden of proving that his businesses were partnerships with Brenda. Consequently, the trial court did not err in according Kevin only half of the income from the two businesses.

### 3. Determination of Kevin's Income

Cynthia next argues that the trial court improperly used Kevin's 1992 individual and corporate tax returns as the sole basis for

determining his net income for purposes of child support. Rather, she claims that the court should have used the profit and loss statements prepared for the Von Behren businesses to determine net income. Kevin asserts that the court properly relied upon his tax returns as evidence of his income.

At oral arguments, the parties revealed that Kevin did not provide Cynthia with a copy of his 1992 tax returns until Kevin was testifying at the first child support hearing in June 1993. Kevin's attorney gave Cynthia copies of Kevin's tax returns only after he began questioning Kevin about the tax returns. In fact, Kevin signed and dated these 1992 tax returns in open court only a few moments later. Cynthia's attorney also explained that for several days prior to the hearings, he had attempted to obtain copies of the tax returns from Kevin's attorney and accountant, but he did not receive anything. After receiving the tax returns, Cynthia's attorney objected to their use because this was the first time that he had seen them, but the trial court also overruled the objection.

Furthermore, at the beginning of the first hearing, Cynthia's attorney argued for a continuance because he lacked sufficient information about Kevin's financial status due to Kevin's ongoing refusal to provide relevant information and documents. Since Cynthia's attorney had taken over her case in March 1992, he had sent Kevin numerous interrogatories and requests for documents, but Kevin only provided partial answers to the interrogatories and did not begin to provide any meaningful documents until a few days before the hearings. Nevertheless, the trial court denied this motion.

■ Based upon these circumstances, we conclude that Cynthia's attorney acted appropriately in his efforts to obtain information regarding Kevin's financial status, including his 1992 tax returns, prior to the child support hearings, and Kevin improperly thwarted those efforts. When Kevin finally provided the 1992 tax returns during his testimony, the trial court gave Cynthia's attorney no time to review these tax returns and the related financial information. Thus, we hold that the trial court abused its discretion by denying Cynthia's request for a continuance to review this information and challenge it. In effect, the trial court's ruling rewarded Kevin's obstructionist, "stonewalling" tactics, to the detriment of our system of civil justice.

■ Furthermore, we note that Kevin "took the Fifth Amendment" during cross-examination when asked questions about why he filed his 1989, 1990, and 1991 tax returns late and why he had not yet filed his 1992 tax returns. If Kevin wants the trial court to consider these tax returns as evidence of his income for determining

the amount of his child support obligation, he must be willing to testify regarding any relevant questions about them. The cross-examination of Kevin goes to the validity of these tax returns and Kevin's credibility. Thus, we hold that in light of the trial court's allowing Kevin to assert the fifth amendment during cross-examination, it improperly considered his 1992 tax returns for determining his income for child support purposes. As we see it, Kevin has two choices: (1) he can assert the fifth amendment regarding these issues during cross-examination, but then he *cannot* rely upon his tax returns as evidence of his 1992 income; or (2) he can submit his 1992 tax returns as evidence of his 1992 income, but then he *cannot* assert the fifth amendment during cross-examination.

We add that this holding only limits Kevin's use of these tax returns. Cynthia remains free to make any legitimate use of them in any way she wishes.

■ We also note that the trial court erred in determining Kevin's income from his 1992 individual and corporate tax returns. Our review of the record indicates that the court determined Kevin's income by adding the taxable income stated on the 1992 corporate return for Von Behren Electric, Inc., with the rental income stated on Kevin's 1992 individual return which he received from Von Behren Properties. Because the court found that Kevin was in partnership with Brenda, it divided this total in half to determine Kevin's annual net income. However, the salaries which Von Behren Electric, Inc., paid both Kevin and Brenda were deducted as a business expense on the corporate tax return. This income does appear on their 1992 joint individual return, but the court did not include it as part of their net income. The salary from Von Behren Electric, Inc., is clearly income received by Kevin which the court should consider when determining his income.

In sum, because the trial court improperly relied upon Kevin's 1992 tax returns in determining his income and setting his child support obligation, we reverse its orders regarding child support, including the limited retroactive award of child support, and remand these issues back to the trial court for new proceedings on this issue. As a result, we need not address the additional arguments Cynthia raises concerning the trial court's determination of child support.

## B. *Cynthia's Attorney Fees*

Cynthia also argues that the trial court erred by not awarding her all the attorney fees she requested ($35,165.50). The court awarded her only a portion of her requested fees ($1,693.75). She claims that she does not have the resources to afford an attorney and

that her attorney presented a detailed work sheet supporting her claim for fees. Kevin contends that the trial court's findings support its order regarding the award of Cynthia's attorney fees.

Section 508 of the Act allows the trial court to award attorney fees if justified by the parties' respective financial resources. (750 ILCS 5/508(a) (West 1992).) In general, each party has a primary obligation to pay his or her own attorney fees. (See *In re Marriage of Mantei* (1991), 222 Ill. App. 3d 933, 941, 583 N.E.2d 1192, 1197.) Whether a former spouse's attorney fees should be paid in whole or in part by the other spouse lies within the sound discretion of the trial court, and this court will not overturn its decision absent an abuse of discretion. (*In re Marriage of Blazis* (1994), 261 Ill. App. 3d 855, 870, 634 N.E.2d 1295, 1304.) Further, in order to award attorney fees, the trial court should find that the spouse seeking fees has demonstrated her financial inability to pay and her former spouse's financial ability to pay. *In re Marriage of Carpel* (1992), 232 Ill. App. 3d 806, 832, 597 N.E.2d 847, 866.

The trial court ordered Kevin to pay a small portion of Cynthia's attorney fees based upon the following findings: (1) the children are not of tender years; (2) Cynthia is employable but has voluntarily chosen not to be employed; (3) Cynthia caused a substantial portion of the delays in this matter; (4) Cynthia is responsible for a great deal of the discovery problems she encountered: (5) Cynthia was found in wilful contempt for failure to comply with visitation orders and interfering with Kevin's visitation rights; (6) "Cynthia should bear the bulk of her attorney's fees" because of the aforesaid findings; and (7) Kevin should bear a portion of her attorney fees for the hearings held in June and July 1993 and preparations related to those hearings.

█ Cynthia essentially claims that the trial court's findings were erroneous and thus its final award of her attorney fees was erroneous. After reviewing the record, we agree with Cynthia that some of the trial court's findings were erroneous, such as its statement that the parties' children are no longer "of tender years" and thus Cynthia could seek employment. This ignores the fact that Cynthia has a child under four years old that she had with her current husband. More important, we disagree with the trial court's apparent conclusion that Cynthia should be working rather than staying at home to raise her children.

In *In re Marriage of Hensley* (1991), 210 Ill. App. 3d 1043, 1050, 569 N.E.2d 1097, 1101, this court reviewed an ex-husband's claim that his former wife should enhance her employment situation in order for her to be entitled to continued maintenance payments. The

former wife worked only part time while raising their two children. This court determined that the trial court did not abuse its discretion by concluding that the former wife's decision to act as a homemaker and hold a part-time job was *"fully equivalent"* to obtaining full-time employment. (Emphasis in original.) (*Hensley*, 210 Ill. App. 3d at 1052, 569 N.E.2d at 1102.) Although the issue in *Hensley* concerned maintenance, not attorney fees, we hold that the reasoning in *Hensley* applies to this case.

Cynthia has elected to stay home and take care of her preschool-age child and her other children when they come home from school while coordinating their after-school activities. We deem Cynthia's decision to be a homemaker and raise her children as equivalent of a full-time job producing income, and we hold that the trial court abused its discretion by concluding that her decision to do so supports in any way its finding that she "should bear the bulk of her attorney's fees."

Kevin contends that the trial court properly denied Cynthia's request for attorney fees based upon its finding Cynthia in contempt for visitation violations. (See *Ingwerson v. Woeckener* (1986), 141 Ill. App. 3d 647, 650, 490 N.E.2d 1008, 1010.) Kevin's argument supports the trial court's implicit conclusion that Cynthia should not be awarded any attorney fees related to the custody and visitation proceedings. We conclude that evidence exists (most notably the visitation problems that arose and the contempt finding) to support the trial court's conclusion that Cynthia's conduct regarding visitation requires her to bear the cost of any attorney fees related to custody and visitation issues. Thus, we cannot say that the trial court abused its discretion in so finding.

However, the same does not hold true for Cynthia's attorney fees which stem from the proceedings related to child support. The trial court found Cynthia responsible for a "great deal of the discovery problems [she] encountered." Based upon our review of the record, this finding is totally unsupported and constitutes an abuse of the trial court's discretion.

Although neither party has clean hands regarding their dealings with each other, the record indicates that Kevin's conduct was particularly egregious regarding disclosure of financial information pertaining to the issue of child support. Kevin considerably delayed answering all discovery questions regarding his financial situation despite Cynthia's repeated demands for that information. He did not file a financial affidavit until a week before the hearings on child support, nor did he provide his 1992 tax returns until the middle of those hearings. Rather than attempting to cooperate, Kevin continu-

ally chose to challenge every question from Cynthia without providing any meaningful information. A review of Kevin's testimony during the hearings reveals that he continually attempted to conform and contort his testimony to his apparent notion of what would be the best answer to support his position.

■ Although Cynthia may be responsible for some of the delays in resolving these matters, we conclude that the trial court abused its discretion by not holding Kevin responsible for a much larger portion of Cynthia's attorney fees which were connected to the child support proceedings. We also note that the trial court's findings regarding attorney fees are inconsistent because it did not assess fees for any of the June 1993 hearings.

Accordingly, we hold that the trial court did not abuse its discretion by denying Cynthia attorney fees for the proceedings related to custody and visitation; however, the court did abuse its discretion by limiting the award of attorney fees connected to the issue of child support, and we remand this issue to the trial court for further proceedings. We also conclude that Kevin's conduct as discussed above should be considered by the trial court when reviewing the award of retroactive child support.

## III. CONCLUSION

For the reasons stated, we affirm the trial court's finding that a partnership existed between Kevin and Brenda in the two businesses, but reverse and remand all remaining issues related to child support, including the limited award of retroactive child support. We also reverse and remand the issue of Cynthia's attorney fees related to the child support proceedings. Specifically, we direct the trial court to first review the issue of Cynthia's attorney fees which she accumulated up to this point in the case. After resolving this matter, the court should then address the child support issues and any new requests for attorney fees related to these new proceedings.

Affirmed in part; reversed in part and remanded with directions.

KNECHT, P.J., and GREEN, J., concur.