*In re* MARRIAGE OF NANCY E. KOCHER, Plaintiff-Appellant, and
NORMAN A. KOCHER, Defendant-Appellee.

Fourth District   No. 4—96—0150

Argued July 10, 1996.—Opinion filed July 26, 1996.

Norman J. Fombelle and Kent A. Rathbun (argued), both of Burger, Fombelle, Zachry & Rathbun, P.C., of Decatur, for appellant.

Michael I. Campbell (argued), of Campbell & Robinson, of Decatur, for appellee.

JUSTICE STEIGMANN delivered the opinion of the court:

In June 1994, the trial court entered a judgment dissolving the marriage of plaintiff, Nancy E. Kocher, and defendant, Norman A. Kocher, and awarding Nancy permanent maintenance. In January 1996, Norman filed a petition to terminate maintenance, and in February 1996, the court granted his petition. Nancy appeals, arguing that (1) the trial court erred as a matter of law by terminating maintenance when (a) it heard no evidence regarding the standard of living established during the marriage, and (b) it failed to consider relevant statutory factors; and (2) even if the court considered relevant statutory factors, it abused its discretion by granting the petition to terminate maintenance. We affirm.

## I. BACKGROUND

Nancy, 51 years old at the outset of these proceedings, and Norman, 63 years old, married in September 1964. Their marriage ended

in June 1994, after 29 years. In its June 1994 judgment of dissolution, the trial court awarded Nancy $200 per month in permanent maintenance.

In January 1996, Norman filed a petition to terminate maintenance pursuant to section 510(a) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a) (West 1994)), alleging "a material change in circumstances *** in that [Nancy] has now obtained full-time employment ***; she is self-supporting, and her income exceeds the income of [Norman]." After a February 1996 hearing, the trial court granted Norman's petition.

## II. THE PARTIES' STANDARD OF LIVING DURING THE MARRIAGE

Nancy first argues that the trial court erred when it granted Norman's petition to terminate maintenance without requiring Norman to present evidence regarding the parties' standard of living established during their marriage. We disagree.

■ Nancy correctly points out that the standard of living established during her marriage with Norman is a factor which the trial court must consider in deciding whether to modify or terminate maintenance. 750 ILCS 5/504(a)(6) (West 1994); *In re Marriage of Carpel*, 232 Ill. App. 3d 806, 828, 597 N.E.2d 847, 863 (1992). In *In re Marriage of Hucker*, 259 Ill. App. 3d 551, 555, 631 N.E.2d 299, 302 (1994), this court held that the factors set forth in section 504(b) of the Act that a trial court must consider when deciding whether to order maintenance—and if so, how much—similarly apply to petitions brought under section 510(a) of the Act, seeking to modify or terminate maintenance.

### A. The Financial Affidavits

■ The party petitioning for a change in maintenance should be allowed to offer testimony regarding how the parties lived during their marriage. See *Carpel*, 232 Ill. App. 3d at 831, 597 N.E.2d at 865. However, that party is not *required* to present such testimony if the trial court already has evidence before it of the parties' standard of living established during their marriage.

■ Circuit Court Rule 7.1(g) of the Sixth Judicial Circuit sets forth that, in a post-judgment petition involving financial matters, both parties must provide the trial court with financial affidavits which include facts about the parties' current and predissolution financial circumstances, as follows:

> "In all post-judgment petitions involving financial matters, ***
> the moving party shall prepare a financial affidavit *** which
> shall include facts about the party's present financial circum-

stances. The affidavit shall be filed prior to, or contemporaneously with, the request for setting. *** In the event the moving party does not have an affidavit on file which represents his or her financial condition at the time of the dissolution, such party shall file such an affidavit at the time of filing their post-trial affidavit. The responding party shall file a post-trial affidavit setting forth their present financial circumstances at least seven (7) days prior to the scheduled hearing and at the same time shall file an additional affidavit setting forth his or her financial circumstances at the time of the dissolution, unless such an affidavit has been previously filed." Sixth Judicial Cir. Ct. R. 7.1(g) (eff. November 1, 1992).

This rule clearly contemplates the trial court's use of such affidavits when the court decides petitions involving financial matters (including petitions to modify or terminate maintenance). In addition, section 802 of the Act envisions such a rule, providing that "subject to the Rules of the Supreme Court, the respective circuit courts[ ] may adopt such rules as they deem necessary and expedient to carry out the provisions of this Act." 750 ILCS 5/802 (West 1994). Supreme Court Rule 21(a) provides that "a majority of the circuit judges in each circuit may adopt rules governing civil *** cases which are consistent with these rules and the statutes." 134 Ill. 2d R. 21(a).

Reviewing Sixth Judicial Circuit Court Rule 7.1(g) in light of section 802 of the Act, we conclude that this rule is both "necessary and expedient" when resolving marital disputes involving financial matters, and that such affidavits serve the dual purposes of (1) saving the time of both court and counsel, and (2) facilitating the resolution of the claims at issue. We specifically hold that when a trial court receives financial affidavits, it can consider them as if their contents had been presented as direct testimony during a hearing. Further, as long as the court makes clear on the record which affidavits it is considering, the court need not formally receive them into evidence during a hearing involving financial matters.

Sixth Judicial Circuit Court Rule 7.1(g) essentially provides that a financial affidavit submitted in compliance with that rule is admissible as an exception to the hearsay rule. Because a trial court receives the contents of such affidavits as direct testimony, the court also must allow the opposing party an opportunity to cross-examine the party submitting the financial affidavit, unless the opposing party waives that opportunity. If the opposing party waives the opportunity to cross-examine, the affidavit—as with direct testimony not cross-examined—remains properly before the court. However, if the opposing party does *not* waive that opportunity, the court should not

consider such an affidavit if the party submitting it (1) does not make herself available for cross-examination, or (2) otherwise refuses to submit to cross-examination.

In *In re Marriage of Hassiepen*, 269 Ill. App. 3d 559, 567-68, 646 N.E.2d 1348, 1355 (1995), the trial court permitted a party to use his tax returns as evidence of his income in determining his child support obligation, even though that party asserted the fifth amendment and refused to testify on cross-examination regarding any relevant questions about those returns. This court reversed, holding that if a party wishes to assert his fifth amendment protections regarding his tax returns, then the trial court cannot consider those returns as evidence. *Hassiepen*, 269 Ill. App. 3d at 567-68, 646 N.E.2d at 1355. Our analysis in *Hassiepen* informs our decision in this case. Just as in *Hassiepen*, where the trial court could not consider a party's tax return as evidence when the party's opponent had no opportunity to cross-examine him regarding that tax return, so in the present case—and in any case dealing with financial affidavits—the court may not consider one party's affidavit when the opponent has been deprived of the opportunity to cross-examine regarding that affidavit.

We note that our interpretation of Sixth Judicial Circuit Court Rule 7.1(g) is consistent with section 605 of the Act, which provides that a trial court may consider an investigator's report when reviewing child custody arrangements. 750 ILCS 5/605 (West 1994). In *Heldebrandt v. Heldebrandt*, 251 Ill. App. 3d 950, 955-56, 623 N.E.2d 780, 784 (1993), this court held that when a court receives such a report pursuant to section 605(c) of the Act, it can consider the report as if its contents had been given as direct testimony during a hearing.

█ In the present case, when Nancy's attorney stated, during the hearing, that Nancy's pay stubs from her new job were attached to her financial affidavit, the following discussion took place:

"[Norman's attorney]: Your Honor, I can't question her affidavit.

THE COURT: What do you want to do?

[Norman's attorney]: I want my petition to be granted.

THE COURT: With respect to the motion to produce.

[Norman's attorney]: Well, your Honor, she is not here so I don't really know what to do, other than ask that my petition be granted.

THE COURT: You are not asking to recess the hearing?

[Norman's attorney]: She is in the State of North Carolina.

THE COURT: [Addressing Nancy's attorney], [A]ny evidence?"

Nancy's attorney then recalled Norman to the stand, and he testified very briefly. Neither party presented any other evidence.

If Norman's attorney wanted to object to the trial court's considering Nancy's affidavit—an objection which would have been well taken in Nancy's absence—he should have done so. Even assuming that the above comments by Norman's attorney constituted a proper objection to the trial court's considering Nancy's affidavit, he never obtained the court's ruling on the objection. Thus, under these circumstances, any objection to the court's consideration of Nancy's affidavit was waived. *Feldscher v. E&B, Inc.*, 95 Ill. 2d 360, 365-66, 447 N.E.2d 1331, 1334 (1983) (where the party objected to the admission of an affidavit and an unsworn statement, but did not obtain a ruling from the trial court, the objection was waived, and the court properly considered the evidence).

### B. Sufficiency of the Evidence Before the Trial Court

■ Because Norman's attorney failed to obtain a ruling from the trial court, Norman waived any opportunity to cross-examine Nancy on her affidavit, and the trial court properly had before it both parties' post-dissolution financial affidavits, as well as their predissolution judgment financial affidavits (as part of the record from the original dissolution proceedings). The affidavits set forth their living expenses during their marriage and after its dissolution, including what the parties spent for food, clothing, entertainment, and other expenditures. The court also had before it the 1994 judgment of dissolution which reflected—at least implicitly—the court's assessment of the factual averments contained in the parties' predissolution financial affidavits. We conclude that the court properly had before it sufficient evidence of the parties' standard of living established during their marriage, and it did not need to require Norman to offer more such evidence. To conclude otherwise would result in wasted judicial resources with no discernible benefit to either party.

### III. NANCY'S CLAIM THAT THE TRIAL COURT EITHER FAILED TO CONSIDER RELEVANT STATUTORY FACTORS OR ABUSED ITS DISCRETION BY TERMINATING MAINTENANCE

Nancy argues that the trial court erred by failing to consider relevant statutory factors in granting Norman's petition, and if the court properly considered the relevant statutory factors, it abused its discretion by terminating maintenance. We disagree.

■ The decision to modify or terminate maintenance rests within the sound discretion of the trial court, and we will not reverse absent an abuse of that discretion. *Hucker*, 259 Ill. App. 3d at 555, 631 N.E.2d at 302. An abuse of discretion occurs only where no reasonable person could adopt the trial court's position. *In re Marriage of Dunseth*, 260 Ill. App. 3d 816, 831, 633 N.E.2d 82, 94 (1994).

■ Under section 510(a) of the Act, maintenance may be modified only where the moving party can demonstrate a "substantial change in circumstances." 750 ILCS 5/510(a) (West 1994). In determining whether to modify or terminate maintenance, the trial court should consider the same factors it considered when making the initial award of maintenance (see *In re Marriage of Pedersen*, 237 Ill. App. 3d 952, 956, 605 N.E.2d 629, 632-33 (1992)), which include the following: (1) the standard of living established during the marriage; (2) the financial resources of the party seeking maintenance; (3) the ability of the other spouse to pay; (4) the needs of both parties; (5) the age and the physical and emotional condition of both parties; and (6) the contributions and services by the party seeking maintenance to the education, training, career or career potential of the other spouse. *Pedersen*, 237 Ill. App. 3d at 956, 605 N.E.2d at 633. Although a trial court must consider all relevant statutory factors, it need not make specific findings as to the reasons for its decision. See *In re Marriage of Swanson*, 275 Ill. App. 3d 519, 528, 656 N.E.2d 215, 222 (1995).

■ At the February 1996 hearing, Norman testified that he retired soon after the dissolution. (According to the original judgment of dissolution, the trial court specifically considered that fact in determining the award of Nancy's permanent maintenance.) In his post-judgment financial affidavit, Norman listed $859 in a monthly pension from A.E. Staley and $982 monthly social security as income. Norman also listed post-judgment monthly living expenses of $2,170 (an increase of $953 since the dissolution); Norman acknowledged that he had remarried and his wife contributed only to food purchases. Norman testified that Nancy worked part-time at the time of dissolution, and, to the best of his knowledge, she was working full-time at the time of the February 1996 hearing. In her post-judgment financial affidavit, Nancy listed total monthly living expenses of $2,078.35, which included monthly debt payments ($300 monthly credit card payments, $15.53 state property tax, $1.58 vehicle inspection). This reflected an increase in total monthly living expenses of $793.35 since the dissolution. Nancy also listed her post-dissolution gross monthly income as $2,406.46, which included $1,538.46 from her new job, $368 from the A.E. Staley pension, and $500 from bonds. On her predissolution financial affidavit, Nancy listed $635.62 as her gross monthly income from her part-time job. After hearing Norman's testimony and counsels' arguments, the trial court stated that it considered all evidence and arguments, found a substantial change of circumstances, and granted Norman's petition to terminate maintenance.

If the evidence supports the trial court's determination, we will

affirm notwithstanding the fact that the court could have made it clearer that it had considered all relevant statutory factors in reaching its decision. Certainly, the trial court's doing so would have been of assistance to this court. Although we might have reached a different result than the trial court, on the record before us, we cannot say that the trial court abused its discretion by granting Norman's petition to terminate permanent maintenance.

## IV. CONCLUSION

For the reasons stated, we affirm the trial court's order terminating maintenance.

Affirmed.

COOK, P.J., and McCULLOUGH, J., concur.