No. 2--01--0698

__________________________________________________________________

IN THE

APPELLATE COURT OF ILLINOIS

SECOND DISTRICT

__________________________________________________________________

In re
 MARRIAGE OF ) Appeal from the Circuit Court

VIRGINIA E. TURRELL, ) of Du Page County.

)

Petitioner-Appellant, )

) No. 94--D--1441

and )

)

GRAHAM J. TURRELL, ) Honorable

) John T. Elsner,

Respondent-Appellee. ) Judge, Presiding.

__________________________________________________________________

JUSTICE BOWMAN delivered the opinion of the court:

The marriage of petitioner, Virginia Turrell, and respondent, Graham Turrell, was dissolved in 1995.  Virginia subsequently filed  petitions against Graham, seeking payment of extraordinary medical expenses for the parties' son, Sam, and an increase in child support.  Graham filed a petition to modify the marriage settlement agreement, seeking to reduce his child support obligation and terminate his maintenance obligation.  Graham filed an additional petition in which he asked the court to order Virginia to provide him with notice prior to incurring new or ongoing extraordinary medical expenses for Sam. Following a hearing, the trial court directed a finding in Graham's favor on the issue of the payment of certain medical expenses.  The court denied Virginia's request for increased child support, decreased Virginia's maintenance by 60%, and ordered that her maintenance would end after two years.  Additionally, the trial court ruled that Virginia had to notify Graham before incurring any extraordinary medical expense for Sam and that Graham had the right to investigate and object to any such expense.  Virginia appeals, arguing that (1) the directed finding in Graham's favor on the issue of the payment of certain medical expenses was improper; (2) the trial court abused its discretion when it denied her request for more child support; (3) the trial court abused its discretion when it reduced her maintenance and limited it to two years; and (4) the trial court erred in allowing Graham the opportunity to investigate and object to Sam's extraordinary medical expenses.

BACKGROUND

Under the marital settlement agreement (agreement), Virginia is Sam's sole custodian.  The agreement acknowledges that both Virginia and Sam are afflicted with Lyme disease.  With respect to Sam's medical expenses, the agreement provides that Virginia is responsible for Sam's "ordinary medical expenses" not covered by insurance, which are defined as those less than $25 per occurrence.  Graham bears responsibility for all "extraordinary medical expenses" not covered by insurance.  The agreement does not define "extraordinary medical expenses."

The agreement required Graham to pay child support of $850 per month.  It was later modified to require Graham to pay $894 per month.  In 1997, the parties entered an agreed order increasing child support to $620 biweekly.

The agreement further provided that Graham was to pay Virginia $1,250 per month in maintenance for a period of five years.  At the end of five years, the issue of maintenance was reviewable.  The agreement noted that Virginia received Social Security disability payments and provided that whether Virginia would be entitled to additional maintenance at the end of the five-year period "shall be dependent upon [her] employability, health, and needs at that time."  In 1999 Virginia filed a rule to show cause, alleging that Graham owed $5,197.68 in back child support and $18,395.81 for Sam's extraordinary medical expenses.  Graham filed petitions to modify the judgment of dissolution in which he sought, 
inter alia
, to decrease his child support obligation, terminate his maintenance obligation, and require Virginia to notify him before incurring extraordinary medical expenses for Sam.

At the hearings on the parties' petitions,  Virginia related  Sam's medical history.  He was diagnosed with Lyme disease soon after his birth in 1991.  From 1991 to 1997, he was a patient of Dr. Dorothy Petruca.  Dr. Petruca's office was in New Jersey, and Sam saw her there every six months.  As a result of the Lyme disease, Sam had cognitive deficits, attention problems, and pain in his joints.  Dr. Petruca treated Sam with oral antibiotics.  In 1997, Dr. Petruca referred Sam to Dr. Cancillieri.  Dr. Cancillieri practices in New York and will treat only patients who reside in New York.  Consequently, Sam and Virginia moved to New York from May 1996 through September 1998.  Dr. Cancillieri treated Sam with oral antibiotics and sleeping medications until Sam began having hallucinations and his condition deteriorated significantly.  Dr. Cancillieri then placed Sam on daily intravenous antibiotics.  In August 1999, Sam was doing poorly and Dr. Cancillieri told Virginia there was nothing more he could do for Sam.  Consequently, Dr. Cancillieri referred Sam to Dr. Charles Jones, a physician in Connecticut.  Dr. Jones treats patients with Lyme disease who reside out of state.  Virginia paid for the travel and relocation expenses associated with their trips to the East Coast to visit Sam's physicians as well as a trip to California where she and Sam received hyperbaric oxygen treatment. 

Virginia testified that her daily food and clothing expenses for Sam have increased since the time of the dissolution.  Her grocery expenses increased from $350 to $600 per month because Sam's appetite greatly increased.  She stated that she has to buy Sam new jeans and shoes every three months because of his growth.  In addition, Sam participates in soccer, basketball, baseball, and golf.  These activities require Virginia to buy uniforms, equipment, and shoes.

Virginia testified that she is a registered nurse.  She last worked full time in 1990.  She worked part time until 1991.  She resigned from her nursing job because her short-term memory loss caused by the Lyme disease interfered with her ability to perform her job duties.  At the time of her divorce from Graham, her Lyme disease-related symptoms included fatigue, chronic joint and neck pain, and cognitive difficulties.  As of 2000, she still had difficulty performing daily activities because of fatigue, arthritis, and pain in her hips and knees.  She also continued to experience short-term memory loss.

Virginia further testified that she provides home schooling to Sam because he did not function well in public school.  Because of Sam's learning disabilities, Virginia must assist him with reading, writing, and math.  Virginia stated that she teaches Sam from zero to three hours per day, depending on how Sam is feeling.  

Dr. Jones testified by videotaped deposition.  He specializes in pediatric adolescent medicine.  His practice primarily consists of treating children and adolescents with Lyme disease.  Dr. Jones explained that the symptoms of Lyme disease usually are fatigue, headache, muscle soreness, joint pain and swelling, and occasionally a rash.  Lyme disease affects the brain and peripheral nervous system, causing various cognitive deficits.  

Dr. Jones first saw Sam in December 1999.   He noted that Sam was very fatigued, extremely sensitive to light, and had impaired balance, double vision and intermittent blurred vision, and skin sensitivity.  He also had a sinus and throat infection and generalized arthritis.  In Dr. Jones's opinion, Sam suffered from both gestational and acquired Lyme disease, meaning that he had contracted Lyme disease from Virginia while 
in utero
 and that he had also been bitten by Lyme disease-infested ticks. Dr. Jones testified that Sam has severe disabilities, including learning disabilities, as a result of Lyme disease.  

Dr. Jones prescribed oral antibiotics for Sam, and his condition improved.  However, based on conversations with Virginia and an evaluation of Sam on March 1, 2000, Dr. Jones determined that Sam was not responding adequately to the oral antibiotics alone.  Dr. Jones then placed Sam on intravenous antibiotics while continuing the oral antibiotics.  Sam had to have a port for the intravenous antibiotics surgically placed in his chest.  Dr. Jones also recommended hyperbaric oxygen treatments in conjunction with the antibiotics.  The antibiotics Sam takes can cause gallbladder problems.  Consequently, he must have monthly ultrasounds to make sure he does not develop gallbladder damage.

Dr. Jones testified that Sam's condition is improving.  He did not have any arthritis as of his last office visit.  However, since his hyperbaric oxygen therapy he has experienced increased joint pain and swelling.  His balance is normal, and he has no double vision.  His light sensitivity has improved.  His ability to concentrate and his short-term memory are still impaired.  In Dr. Jones' opinion, if Sam were to stop receiving continuous antibiotics he would relapse and his Lyme disease would not be cured.  Dr. Jones anticipates that Sam will have to receive two to three years of continuous antibiotic therapy.

On cross-examination, Dr. Jones acknowledged that most physicians treat Lyme disease with a two- to six-week course of antibiotics.   That is the treatment taught in medical school.  The New York licensing board believes that four to six weeks of antibiotic therapy is proper.  Dr. Jones stated that he is the only doctor in the United States who treats children with Lyme disease with prolonged antibiotics.  Such treatment can cause liver and gallbladder damage and can cause the patient to develop an allergic reaction to the antibiotics.  Dr. Jones testified that most hyperbaric treatment facilities will not treat patients with Lyme disease.  Dr. Jones is not aware of such a facility in Illinois that will treat Lyme disease patients.

Dr. Jones also testified that he reviewed Virginia's medical records and, based on those records and his conversations with Virginia, she suffers from persisting Lyme disease and, as a result, cannot work.  He never treated Virginia. In Dr. Jones' experience, most adults with Lyme disease are employed.

Graham testified that he is currently employed as the chief executive officer of Empirical Solutions.  He earned $146,877 in 1996, $86,000 in 1997, $125,000 in 1998 and $90,720 in 1999.  

The trial court directed a finding for Graham on the issue of his responsibility for certain of Sam's extraordinary medical expenses.  The court ruled that Graham is responsible for paying only those medical expenses that are "for a method of treatment that is recognized by the medical community for a recognized medical need."  The court found that Dr. Jones's treatment did not fall into this category because it was not provided by any other physician and was found to be "suspect" by the New York medical board.  The court further found that Virginia failed to present evidence regarding Dr. Cancillieri's diagnosis and treatment of Sam and whether his treatment was recognized by the medical community.  Accordingly, the court ruled that Graham had no duty to pay any expenses related to Sam's treatment by Dr. Jones or Dr. Cancillieri, including any transportation and lodging expenses.

As to Graham's child support, the court ordered Graham to pay  the child support arrearage but declined to increase child support.  The court further found that there was no evidence establishing that Virginia could not work.  However, the court determined that she should receive some maintenance until Sam reached 12 years of age because until that time Sam would require care before and after school.  Therefore, the court reduced Virginia's maintenance by 60%, to $513.60 per month, and ordered that the maintenance would end after a two-year period.

The court subsequently entered an order modifying the portion of the settlement agreement pertaining to the payment of Sam's medical expenses.  The court's order provides in relevant part:

"Paragraph 10 of the parties' Settlement Agreement incorporated in their Judgment for Dissolution of Marriage entered on March 7, 1995, is modified as follows:

GRAHAM shall be responsible to pay the extraordinary medical expenses for the parties' minor son to the extent they are not covered by insurance upon the following conditions:

If VIRGINIA believes an extraordinary medical expense is necessary for SAMUEL, she shall notify GRAHAM in writing of the medical procedure, treatment, test, evaluation or other service to be provided, the name, address, telephone number of the intended provider and the estimated cost for the service.  GRAHAM shall then have fourteen (14) days in which to investigate the extraordinary expense proposed by VIRGINIA.  Not later than fourteen (14) days following VIRGINIA's notice to GRAHAM, he shall respond to her in writing and inform her if he agrees to the expense or disagrees.  If GRAHAM disagrees as to the need for the service, the proposed provider of service or the cost of service, GRAHAM shall have the right to file a petition and shall not be obligated to pay the proposed extraordinary expense unless ordered to do so by a court of competent jurisdiction.  For purposes of this paragraph extraordinary medical expenses shall be defined as all medical, dental, optical, psychological, surgical and orthodontia, consultation, examination and treatment, all medications, eyeglasses, contact lens, braces and other dental appliances for which the cost for an individual occurrence or series of occurrences is greater than $200.00.  VIRGINIA shall be responsible to pay all ordinary and routine medical and dental expenses for SAMUEL.  For purposes of this paragraph, ordinary expense shall be defined as those which are less than $50.00 per occurrence." 

Virginia filed a timely notice of appeal challenging the trial court's orders.  

ANALYSIS 

We note initially that Graham filed a motion to dismiss the appeal on the ground that jurisdiction is lacking.  We denied Graham's motion and need not revisit the issue.

The first issue Virginia raises is whether the trial court erred when it granted Graham's motion for a directed finding on her petition for the payment of extraordinary medical expenses.  Virginia contends that the trial court improperly added a condition to the dissolution decree by ruling that Graham is responsible for paying only those extraordinary medical expenses "for a method of treatment which is recognized by the medical community for a recognized medical need."  

When a trial court has directed a finding in a bench trial, we review that decision under the manifest weight of the evidence standard.  
Zannini v. Reliance Insurance Co. of Illinois, Inc.
, 147 Ill. 2d 437, 448-49 (1992).  The court must first determine whether the petitioner presented a 
prima facie
 case.  
Zannini
, 147 Ill. 2d at 449. If the petitioner has failed to do so, then the court should direct a finding for the respondent.  
Zannini
, 147 Ill. 2d at 449.  If the petitioner has made a 
prima facie
 case, then the court weighs the evidence, taking into account the credibility of the witnesses and the weight and quality of the evidence.  
Zannini
, 147 Ill. 2d at 448-49.  We will not reverse the trial court's determination unless it is contrary to the manifest weight of the evidence.  
Zannini
, 147 Ill. 2d at 449.  

In the case before us, the basis of the trial court's decision lay in its definition of the term "medical expense" as used in paragraph 10 of the settlement agreement.  A marital settlement agreement that is incorporated into a dissolution decree is interpreted in the same manner as other contracts.   
In re Marriage of Mulry
, 314 Ill. App. 3d 756, 758 (2000).  The construction of a contract is a question of law, which we review 
de novo
.  
Mulry
, 314 Ill. App. 3d 758.  Accordingly, we must determine whether the trial court correctly construed the agreement before we reach the issue of whether the decision to direct a finding in Graham's favor was against the manifest weight of the evidence.   

A court construes the settlement provisions within a dissolution judgment so as to give effect to the parties' intention.  
Mulry
, 314 Ill. App. 3d at 759.  When the terms are unambiguous, the court determines the parties' intent solely from the language of the instrument.  
Mulry
, 314 Ill. App. 3d at 759.  We consider the instrument as a whole and presume that the parties included each provision deliberately and for a purpose.  
Mulry
, 314 Ill. App. 3d at 759.  We will not construe the terms and provisions in a manner that is contrary to or different from the language's plain and obvious meaning.  
Mulry
, 314 Ill. App. 3d at 760.  

We determine the language of the settlement agreement to be plain and unambiguous with respect to Graham's obligation to pay Sam's extraordinary medical expenses.  Graham's duty to pay extends only to those expenses that are reasonable and necessary. 

Petitioner contends that under the agreement the only criterion for determining whether respondent must pay a particular medical bill is whether the expense exceeded $25.   We believe this interpretation oversimplifies the definition of "medical expense."   In our view, the plain and unambiguous meaning of the term "medical expense" as used in the parties' agreement encompasses only those expenses that are reasonable and necessary.  Perhaps there might be a situation in which a party to a dissolution would agree to pay for treatment that is not considered reasonable or necessary by the medical community.  Such a situation would be the exception, however, rather than the rule and should be specified in the settlement agreement.  In the case before us, the language of the agreement does not indicate that the parties agreed that Graham would pay for such treatment.

Our research has not revealed any Illinois authority that squarely addresses this issue.  Our holding finds support, though, in 
Goldberg v. Goldberg
, 30 Ill. App. 3d 769 (1975).  In that case, the court considered whether the husband was responsible for the  payment of certain medical bills incurred by the wife.  The parties' dissolution decree stated in relevant part that the husband agreed to pay the wife's extraordinary medical expenses exceeding $50, except for psychiatric or psychologic expenses.  The court held that the husband was obligated to pay the expenses at issue because "[a]ll of the bills received into evidence were for amounts above $50 
and there is no indication in the record that such expenses were unreasonable or unnecessary
." (Emphasis added.) 
Goldberg
, 30 Ill. App. 3d at 773.  Virginia cites the same sentence from 
Goldberg
 and argues that it supports her position because all of Sam's expenses were reasonable and necessary.  Apparently, Virginia believes that requiring her to show that Sam's expenses were "for a method of treatment which is recognized by the medical community for a recognized medical need" is different from  requiring her to show that the expenses were reasonable and necessary.  We disagree.   

 The court's requirement, while more specific than the term "reasonable and necessary," does not insert a new condition into the agreement.  The question of whether an expense was for treatment recognized by the medical community goes to the reasonableness of the expense.  Similarly, requiring Virginia to show that the expense was for a "recognized medical need" is simply another way of saying that she must show that the expense was necessary.  Consequently, we hold that the trial court did not err in requiring Virginia to demonstrate that the expenses she incurred for Sam's treatment were "for a method of treatment which is recognized by the medical community for a recognized medical need."  That being said, we consider next whether the trial court properly directed a finding in Graham's favor as to his obligation to pay Dr. Jones's and Dr. Cancillieri's expenses. 

The only medical testimony the trial court heard on the issue of Sam's treatment was that of Dr. Jones.  Even though Virginia is a registered nurse, there was no showing that she is an expert in Lyme disease.  Thus, the trial court properly declined to rely on her testimony regarding Sam's condition and treatment.  Based on Dr. Jones's testimony, the court determined that the course of treatment he prescribed for Sam was not followed by any other physician in the United States and was found to be suspect by the New York medical board.

Virginia contends that the trial court erred by disregarding Dr. Jones's uncontradicted testimony that the continuous intravenous  antibiotics and hyperbaric oxygen treatments were helping Sam.  She cites 
Bazydlo v. Volant
, 164 Ill. 2d 207, 215 (1995), for the proposition that the finder of fact may not arbitrarily or capriciously reject testimony where the testimony is neither contradicted, either by positive testimony or by circumstances, nor inherently improbable and the witness has not been impeached.

We note initially that the trial court did not find that Dr. Jones's treatment was not helping Sam.  That is not the issue.  Any number of treatment methods that are not recognized by the medical community might help Sam feel better, but that does not mean that Sam should receive such treatment or that Graham should pay for it.  Rather, the relevant question, which the court addressed, is whether Dr. Jones's methods of treatment are recognized by the medical community.  Dr. Jones's own testimony established that they are not.  He testified that he is the only physician in the country who treats children with Lyme disease with continuous antibiotic therapy.  He admitted that the medical community generally treats Lyme disease with four to six weeks of antibiotics.  Dr. Jones also prescribed hyperbaric oxygen treatment for Sam.  Virginia and Sam had to travel to California to obtain this treatment because very few hyperbaric treatment centers across the country will treat Lyme disease patients. Thus, Dr. Jones's testimony provided sufficient evidence that his treatment of Sam was not recognized by the medical community and that the expenses for such treatment were not reasonable.

The court also directed a finding in Graham's favor as to Dr. Cancillieri's expenses.  Virginia does not address those expenses in her brief and, therefore, has waived any challenge to the court's order in this regard.  See 
Stewart v. Jones
, 318 Ill. App. 3d 552, 559 (2001).  Consequently, we affirm the trial court's decision as to Dr. Cancillieri's expenses as well.

Virginia's next contention is that the trial court abused its discretion when it denied her petition to increase Graham's child support obligation.  The court may modify a child support award only on proof of a substantial change in circumstances pursuant to section 510(a)(1) of the Illinois Marriage and Dissolution of Marriage Act (Act) (750 ILCS 5/510(a)(1) (West 2000)).  
In re Marriage of Hughes
, 322 Ill. App. 3d 815, 818 (2001).  The petitioning party must show both an increase in the child's needs and the supporting spouse's ability to pay.  
In re Marriage of Morrisroe
, 155 Ill. App. 3d 765, 771 (1987).  The court must determine the threshold issue of whether a substantial change in circumstances has occurred before determining the amount of the increase in child support.  
Hughes
, 322 Ill. App. 3d at 818.  The determination that there has been a substantial change in circumstances sufficient to warrant the modification of child support lies within the trial court's discretion and will not be disturbed absent an abuse of discretion.  
Villanueva v. O'Gara
, 282 Ill. App. 3d 147, 149 (1996).  An abuse of discretion occurs when no reasonable person would agree with the decision.  
In re Marriage of Mitteer
, 241 Ill. App. 3d 217, 224 (1993).  

According to Virginia, both Graham's ability to pay and the expenses related to caring for Sam have increased.  Virginia argues that Graham's yearly income has increased from $68,000 at the time of the judgment of dissolution to $146,000 in 2000.  She contends that Sam's needs have increased, as evidenced by her increased grocery and clothing expenses and her expenses for Sam's sports activities.  The court determined that, looking at Graham's average income over the years, his biweekly obligation of $620 was the proper amount.  

On the issue of Virginia's increased expenses for Sam, the order of May 24, 2001, states that "[t]here was no evidence from any qualified educator that the parties' son, SAMUEL, has to be home-schooled or that he is being properly home-schooled and, accordingly, no basis for deviating from the statutory support guidelines."

The court erred as a matter of law in defining the issue as whether a basis existed for deviating from the statutory guidelines.  The guidelines set the minimum amount of support, not the maximum amount.  See 750 ILCS 5/505(a) (West 2000).  Thus, whether the court deviates from the guidelines is not material unless it sets support below the statutory minimum.  The court should have determined whether a substantial change in circumstances occurred.  We vacate the trial court's denial of Virginia's petition to increase child support and remand the matter for the court to reconsider its decision, applying the correct standard.  We further note that Virginia testified to the increased expenses she has incurred, such as grocery and clothing expenses, that are unrelated to whether Sam is home-schooled.  The court did not address this evidence but, instead, for reasons we could not discern from the record, focused on whether Sam has to be home-schooled.  Upon remand the court should consider all relevant evidence of Sam's increased needs.  We do not express an opinion, however, as to whether Virginia met her burden of demonstrating a substantial change in circumstances.   

Next, Virginia contends the trial court abused its discretion when it reduced her maintenance and limited it to a two-year duration.  The decision to modify or terminate maintenance lies within the sound discretion of the trial court, and we will not disturb the trial court's decision absent an abuse of discretion.  
In re Marriage of Cantrell
, 314 Ill. App. 3d 623, 629 (2000).  Based on our review of the record, we hold that the trial court abused its discretion when it reduced Graham's maintenance obligation and ordered the termination of maintenance after two years.

Section 510(a) of the Act provides that maintenance may be modified only where the moving party can demonstrate a "substantial change in circumstances."  750 ILCS 5/510(a) (West 2000).  
Cantrell
, 314 Ill. App. 3d at 629.  When deciding whether to modify or terminate maintenance, the trial court should consider the same factors it considered when it made the initial maintenance award.  
In re Marriage of Kocher
, 282 Ill. App. 3d 655, 661 (1996).  Those factors include the following: (1) the standard of living established during the marriage; (2) the financial resources of the party seeking maintenance; (3) the other spouse's ability to pay; (4) the needs of both parties; (5) the age and physical and mental condition of both parties; and (6) the contributions by the party seeking maintenance to the other spouse's education, training, career, or career potential.  
Kocher
, 282 Ill. App. 3d at 661.  The trial court must consider all of the relevant statutory factors but need not make specific findings as to the reasons for its decision.  
Kocher
, 282 Ill. App. 3d at 661.

Here, the deciding factor was Virginia's health.  The marital settlement agreement incorporated into the dissolution judgment acknowledged that she is afflicted with Lyme disease and was receiving Social Security disability payments.  The agreement provided that the issue of maintenance was reviewable after five years and that "[t]he payment of additional maintenance *** shall be dependent upon the Wife's employability, health, and needs at that time."  At the hearing, Virginia testified that she continues to receive disability and is unable to work as a nurse because she experiences short-term memory loss and fatigue.  Dr. Jones also testified that Virginia is unable to work because of her symptoms.  Dr. Jones acknowledged, however, that he is not Virginia's treating physician.  Virginia further testified that she home-schools Sam due to his cognitive deficits and other symptoms caused by the Lyme disease.

After hearing the evidence, the trial court found there was no medical evidence to support Virginia's claim that she is unable to work.  In so doing, the court improperly placed the burden of proof on Virginia and erred as a matter of law.  Graham petitioned the court to terminate his maintenance obligation.  As the party seeking the modification, he had the burden of demonstrating a substantial change in circumstances.  
In re Marriage of Neuman
, 295 Ill. App. 3d 212, 214 (1998).  Thus, he was required to show a substantial change in circumstances that would justify reducing his maintenance obligation.  Contrary to the trial court's ruling, Virginia did not have the burden of proving that she remained physically unable to work.  

Based on our review of the record, Graham did not meet his burden.  He did not establish a substantial change in Virginia's health that would enable her to return to work, nor did he establish a substantial change in his own financial circumstances that would support reducing his maintenance obligation.  We hold, therefore, that the reduction in maintenance was an abuse of discretion.  Likewise, the two-year limit on Graham's maintenance obligation cannot stand.  There is no guarantee that Virginia's condition will have improved by end of the two-year period.  Certainly a review of the maintenance issue would be appropriate.  Upon remand the court may in its discretion determine if and when such a review should take place.

Virginia's last contention is that the trial court erred when it ordered her to notify Graham regarding proposed extraordinary medical expenses and allowed Graham the opportunity to investigate and object to the proposed expenses.  Virginia claims that Graham has failed to demonstrate a substantial change in circumstances that would justify this modification to the parties' agreement.  Graham responds that the change is one of procedure rather than substance and, therefore, he is not required to show a substantial change in circumstances.  Alternatively, he contends that he has established a substantial change in circumstances by showing that Sam has been receiving nonstandard medical care from the physicians Virginia has selected.

We agree with Virginia that a showing of a substantial change in circumstances was required in order for the court to modify the settlement agreement as it did.  Sam's medical expenses are in the nature of child support, and, thus, modifications to provisions of the agreement pertaining to the payment of such expenses are governed by section 510(a) of the Act (750 ILCS 5/510(a) (West 2000)).  That section provides in relevant part that the provisions of any judgment respecting maintenance or support may be modified only upon a showing of a substantial change in circumstances.  750 ILCS 5/510(a) (West 2000).  The statute does not distinguish between "procedural" and "substantive" changes, and Graham does not cite any authority for his contention that "procedural" changes are exempt from the requirements of section 510(a).  Moreover, as Virginia points out, the court's order not only implements the "procedural" changes but also increases the "ordinary expenses" for which she is responsible from $25 to $50.  For these reasons, we conclude that Graham had to show a substantial change in circumstances to be entitled to the relief he requested.

We agree with Graham that there was evidence of a substantial change in circumstances sufficient to support the notification requirement and the opportunity for him to object to the expenses he believes to be unreasonable or unnecessary.  The trial court found that the treatment Sam has been receiving from Dr. Jones was not followed by any other physician who treats children with Lyme disease and was considered suspect by the New York medical board.  This constitutes a substantial change in circumstances from the time of the entry of the judgment of dissolution, when Dr. Jones was not treating Sam and Sam was not receiving the same type of treatment that Dr. Jones prescribed.

Virginia also contends that the trial court's order impermissibly intrudes upon her interests as Sam's sole custodian in making decisions about his medical treatment.  Technically, Virginia retains the authority to obtain whatever treatment she feels is best for Sam.  Practically speaking, it may be financially impossible for Sam to receive the treatment Virginia chooses if the court determines that Graham is not responsible for the expense of such treatment.  We believe the court's solution strikes an appropriate compromise between Virginia's interests as Sam's sole custodian and Graham's interests in preventing unreasonable and unnecessary expenses.  We hope the parties will keep Sam's best interests in mind and try to resolve any differences that may arise without resorting to further litigation.

That being said, the order setting forth the modifications to the agreement is problematic in several respects.  First, the order requires Virginia to notify Graham of any proposed extraordinary medical expense over $200.  Graham then has 14 days to investigate the proposed expense and to inform Virginia in writing of whether he agrees to the expense.  The court's order next provides that Graham has the right to file a petition if he disagrees with the need for the proposed treatment, the proposed provider, or the cost of the treatment.  The order does not provide a time limit within which Graham must file his petition.  Because the petition involves Sam's medical treatment, we believe the court should set a specific time limit for Graham to file a petition so that the necessary decisions related to Sam's treatment may be made as expeditiously as possible.

The court's order is also unclear as to the parties' respective responsibilities for Sam's medical expenses.  In the initial agreement, Virginia was responsible for paying ordinary medical expenses, defined as those expenses less than $25.  Graham bore the responsibility for expenses greater than $25. The order of May 30, 2001, states that it modifies paragraph 10 of the agreement.  It goes on to say that Virginia is responsible for all ordinary expenses, defined as those expenses less than $50 per occurrence.  The order provides that Graham is responsible for all extraordinary expenses not covered by insurance and defines "extraordinary expense" as those expenses for which the cost of an individual occurrence or series of occurrences is greater than $200.  The order fails to account for those expenses between $50 and $200.  Graham contends that the modification only determines the level at which Virginia must notify Graham of proposed treatment.  The order does not say that, however, nor does it state whether the modification was intended to supplant the original paragraph 10 in its entirety or whether portions of the original paragraph 10 remain in effect.  Accordingly, we direct the court upon remand to clarify its order as to the parties' responsibilities under paragraph 10 of the agreement, as modified.

Virginia also argues that the court erred in increasing her obligation toward Sam's medical expenses from $25 to $50.  We might be inclined to agree with Virginia had she provided some argument  and citations to the record to support her contention.  Because she did not, this argument is waived for purposes of appeal. 
City of Highwood v. Obenberger
, 238 Ill. App. 3d 1066, 1073-74 (1992) (bare contentions, in the absence of argument or citation of authority, do not merit consideration on appeal and are deemed waived).

Accordingly, for the reasons stated, we affirm the trial court's order directing a finding in favor of Graham on the issue of his responsibility for the extraordinary medical expenses related to treatment by Dr. Jones and Dr. Cancillieri.  We vacate the denial of Virginia's petition to increase child support and remand the cause for further proceedings in accordance with this opinion.  We reverse the reduction and limitation of Virginia's maintenance.  We affirm the trial court's decision to implement procedures that give Graham the opportunity to investigate and object to proposed extraordinary medical expenses but remand the cause for clarification of those procedures and the parties' financial responsibilities under paragraph 10 of the agreement.  

Affirmed in part, vacated in part, and reversed in part; cause remanded.

McLAREN and GROMETER, JJ., concur.