NOTICE
This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2019 IL App (4th) 190362-U

NO. 4-19-0362

IN THE APPELLATE COURT

OF ILLINOIS

FOURTH DISTRICT

FILED
December 13, 2019
Carla Bender
4th District Appellate
Court, IL

| | | |
|---|---|---|
| AMANDA R. DAVIS, | ) | Appeal from the |
|     Petitioner-Appellee, | ) | Circuit Court of |
|     v. | ) | Sangamon County |
| CHRISTOPHER FIELDS, | ) | No. 05F382 |
|     Respondent-Appellant. | ) | |
| | ) | Honorable |
| | ) | Matthew Maurer, |
| | ) | Judge Presiding. |

JUSTICE DeARMOND delivered the judgment of the court.
Justices Steigmann and Turner concurred in the judgment.

**ORDER**

¶ 1    *Held*:    The appellate court affirmed, finding the trial court did not err in finding a substantial change in circumstances sufficient to warrant a modification of child support, modifying the parties' support obligations, or ordering the father to pay half of the minor's educational expenses.

¶ 2    In May 2019, the trial court ordered respondent, Christopher Fields, to pay $568.77 per month in child support and, in addition to his basic support obligation, equally contribute to the minor child's expenses for a private school education.

¶ 3    On appeal, Christopher argues the trial court erred in ordering him to pay one-half of the minor child's educational expenses by (1) relying on insufficient evidence to find a substantial change of circumstances existed, (2) failing to set child support pursuant to the child support guidelines, and (3) deviating from the child support guidelines without providing a proper legal or factual basis to support a deviation or taking into consideration the disparities between the parties' household incomes.

¶ 4                                    I. BACKGROUND

¶ 5            In June 2005, petitioner, Amanda R. Davis, filed a petition pursuant to the Illinois

Parentage Act of 1984 (750 ILCS 45/1 *et seq.* (West 2004)) to determine the existence of the

father-and-child relationship with respect to her minor child, A.D., who was born in 2005. The

parties were not married at the time the minor was born and had not married thereafter. The

petition named Christopher as the presumed father of A.D. and sought the initiation of child

support payments.

¶ 6            In November 2005, after a deoxyribonucleic acid test established Christopher as

A.D.'s father, the trial court entered an order establishing a parent-child relationship between

A.D. and Christopher. One month later, the court entered a child support order requiring

Christopher to pay $1201.20 per month in child support and $336 per month for one-half of

A.D.'s day care expenses. After granting Amanda's motion to reconsider, the court also required

Christopher to pay $240 per month in child support arrearages, which included support

retroactive to June 2005.

¶ 7            In July 2008, the trial court entered an agreed order modifying Christopher's child

support obligation to $248.73 per pay period, which occurred every other week, and adjusted his

day care expenses to $216.66 per month. The modification reflected a change in Christopher's

circumstances, as he had moved and changed jobs to be closer to A.D. The trial court also

entered agreed orders in November 2010 and August 2015, which ended Christopher's day care

obligation and required him to pay child support in the amount of $298.62 per biweekly pay

period (or $647.01 per month).

¶ 8            Amanda filed a motion to modify child support on September 20, 2018, alleging a

substantial change in circumstances warranted a modification because she believed Christopher's

income had increased and A.D.'s needs had increased, particularly because she was attending private school. The trial court held a bench trial on May 8, 2019. During the trial, Christopher presented an exhibit calculating each party's child support obligations. Christopher estimated his obligation to be $568.77 per month, which represented his basic support obligation after adjusting for his two other children. The court also admitted both parties' financial affidavits as exhibits. Amanda's financial affidavit, dated May 8, 2018, states her gross income is $5580.60 per month and her expenses and debts total $8481.52 per month. Her debts include student loans, legal fees, and credit card balances. Christopher's financial affidavit, dated May 3, 2019, shows his gross income is $6022.33 per month and his net monthly income is $4802.85. His expenses total $5990.99 per month. He reported no outstanding debts. Additionally, documents attached to his affidavit showed his gross wages during 2018 were $67,031.27 and his gross earnings in 2019 were $2780.42 per pay period.

¶ 9      The record does not include a transcript of the hearing; however, the trial court's docket entry for the bench trial states the following:

> "The [c]ourt has considered the exhibits, testimony, and statutory factors. The [c]ourt finds there is a substantial change in circumstances warranting a modification of support. The [c]ourt finds Petitioner's testimony credible. The [c]ourt sets Respondent's child support in the amount of $568.77 commencing September 20, 2018[,] which is in fact lower as a result of the change in child support laws; however, the child support expenses are substantially more. The [c]ourt orders the parties equally share the expenses for Springfield Christian School (SCS) commencing September 20,

2018[,] and Lutheran High School (LHS) for school year 2019 and thereafter, plus any school registration fees and application fees each year. Petitioner shall continue to be responsible for all of the minor child's extracurricular activities.

Petitioner testified credibly as to the monthly cost of $549.00 she is incurring for SCS and relief is retroactive to the filing of the petition on September 20, 2018. No testimony or evidence was presented to contradict or dispute her testimony. The [c]ourt finds it is in the best interest of the child that she attend SCS and LHS as a result of problems and issues experienced by the child. The [c]ourt believes Respondent considers it is in the best interest that the child attend private school but does not want to pay for it.

The Petitioner's gross income is $5,580.60 per month and her husband's net income [per year] is $62,328.00. He contributes towards monthly expenses. The Respondent's gross income per month is $6,022.33. His wife earns a gross income of $45,000.00 per year. She contributes towards the monthly expenses. The Respondent has minimal debt. The Petitioner has one other child and the Respondent has two other children."

¶ 10    On May 23, 2019, the trial court formally granted Amanda's motion to modify child support and entered an order requiring Christopher to pay $568.77 per month in child support and one-half of A.D.'s educational expenses. In addition to the findings noted in the

court's docket entry, the order states a substantial change of circumstances existed "as the minor child's expenses have increased." The court also noted Amanda's testimony showed A.D. had "issues" at the public school she previously attended and SCS had smaller class sizes. The court found the change in schools was positive and in the best interests of the minor.

¶ 11          This appeal followed.

¶ 12                              II. ANALYSIS

¶ 13                         A. Supreme Court Rule Violations

¶ 14          Before addressing the merits of the case, we first address Christopher's violations of our supreme court rules. In doing so, we remind the parties that our supreme court rules are "not mere suggestions." *Niewold v. Fry*, 306 Ill. App. 3d 735, 737, 714 N.E.2d 1082, 1084 (1999). " 'They have the force of law, and the presumption must be that they will be obeyed and enforced as written.' " *Billerbeck v. Caterpillar Tractor Co.*, 292 Ill. App. 3d 350, 353, 685 N.E.2d 1018, 1020 (1997) (quoting *Bright v. Dicke*, 166 Ill. 2d 204, 210, 652 N.E.2d 275, 277-78 (1995)).

¶ 15                              1. *Sufficiency of the Record*

¶ 16          Amanda contends the record in this matter is deficient because it does not include a report of the proceedings, and, as a result, the record should be construed against Christopher. We agree.

¶ 17          "[T]o support a claim of error, the appellant has the burden to present a sufficiently complete record." *In re Marriage of Gulla*, 234 Ill. 2d 414, 422, 917 N.E.2d 392, 397 (2009). " 'An issue relating to a circuit court's factual findings and basis of its legal conclusions obviously cannot be reviewed absent a report or record of the proceeding.' [Citation.]" *Gulla*, 234 Ill. 2d at 422. Further, a party's factual "assertions in an appellate brief cannot serve as a

substitute for a proper record." *Coombs v. Wisconsin National Life Insurance Co.*, 111 Ill. App. 3d 745, 746, 444 N.E.2d 643, 644 (1982). "Any doubts which may arise from the incompleteness of the record will be resolved against the appellant." *Foutch v. O'Bryant*, 99 Ill. 2d 389, 392, 459 N.E.2d 958, 959 (1984). "Without an adequate record preserving the claimed error, the court of review must presume the circuit court's order had a sufficient factual basis and that it conforms with the law." *Gulla*, 234 Ill. 2d at 422.

¶ 18    Here, the trial court's docket entry for the May 2019 bench trial states, "[t]he court has considered the exhibits, testimony, and statutory factors" in making its decision. While the record before this court includes the exhibits admitted during the bench trial, the record contains no transcript of the hearing, bystander's report, or agreed statement of facts. See Ill. S. Ct. R. 323 (eff. July 1, 2017). Accordingly, the testimony regarding the basis for modifying the child support payments and requiring Christopher to pay one-half of A.D.'s educational expenses is not before this court. As a result, to the extent Christopher challenges the sufficiency of the trial court's findings, the deficiencies in the record will be construed against him, and we will presume the trial court's order was properly supported by evidence and conforms to the law. *Cf. Gulla*, 234 Ill. 2d at 422.

¶ 19                    2. *Rule 23 Orders*

¶ 20    We also note, Christopher cited and compares this case to an unpublished order under Illinois Supreme Court Rule 23 (eff. Apr. 1, 2018) that is seemingly dispositive of an issue he raises. An unpublished order "is not precedential and may not be cited by any party except to support contentions of double jeopardy, *res judicata*, collateral estoppel or law of the case." Ill. S. Ct. R. 23(e)(1) (eff. Apr. 1, 2018). "The proper remedy for improper use of a nonprecedential case in an appellate brief is to strike the references to the case instead of striking the entire brief."

*Valenti v. Mitsubishi Motor Sales of America, Inc.*, 332 Ill. App. 3d 969, 972, 773 N.E.2d 1199, 1202 (2002). By citing an unpublished order without an applicable exception, he violates Rule 23. Accordingly, any improper references to unpublished orders in Christopher's brief are stricken.

¶ 21                                    3. *Appellant's Brief*

¶ 22          Christopher's brief also fails to comply with Illinois Supreme Court Rule 341(h)(7) (eff. May 25, 2018), which requires an appellant's argument section to "contain the contentions of the appellant and the reasons therefor, with citation of the authorities and the pages of the record relied on." "Both argument and citation to relevant authority are required." *Vancura v. Katris*, 238 Ill. 2d 352, 370, 939 N.E.2d 328, 340 (2010). "A reviewing court is entitled to have the issues on appeal clearly defined with pertinent authority cited and a cohesive legal argument presented. The appellate court is not a depository in which the appellant may dump the burden of argument and research." *Thrall Car Manufacturing Co. v. Lindquist*, 145 Ill. App. 3d 712, 719, 495 N.E.2d 1132, 1137 (1986). " 'The failure to provide proper citations to the record is a violation of Rule 341(h)(7), the consequence of which is the forfeiture of the argument.' [Citation.]" *Enbridge Pipeline (Illinois), LLC v. Hoke*, 2019 IL App (4th) 150544-B, ¶ 43, 123 N.E.3d 1271. However, where the appellate court finds the flaws were not "so serious as to interfere with [the appellate court's] ability to understand and adjudicate [the] case[,]" the court may address the issue presented. *State Farm Mutual Automobile Insurance Co. v. Burke*, 2016 IL App (2d) 150462, ¶ 22, 51 N.E.3d 1082. In such circumstances, while "striking of a brief in whole or in part may be unwarranted," the court must "ignore the improper argument presented in [the] section and disregard any fact or claim not supported by the record." (Internal

quotation marks omitted.) *Centro Medico Panamericano, Ltd v. Benefits Management Group, Inc.*, 2016 IL App (1st) 151081, ¶ 21, 61 N.E.3d 160.

¶ 23          In his brief, Christopher frequently fails to support his assertions with citations to legal authority. For example, in reference to the procedures required for a trial court to deviate from the child support guidelines, Christopher states, with no citation, "The statutory requirement of specific findings has repeatedly been enforced very strictly by the reviewing courts of this state." Similarly, he purports to quote the holding of *In re Marriage of Benkendorf*, 252 Ill. App. 3d 429, 450, 624 N.E.2d 1241, 1255 (1993), to support his argument that only Amanda should have to pay for A.D. to attend private school because he never agreed she should change schools; however, the quotation actually comes from the background section of *In re Marriage of Fraizer*, 2014 IL App (2d) 130788-U, which is an order filed under Illinois Supreme Court Rule 23 (eff. Apr. 1, 2018).

¶ 24          These deficiencies, although flagrant, have not prevented this court from understanding the remaining arguments Christopher presents. Accordingly, rather than striking the offending portions of his brief, we will ignore those portions of Christopher's argument unsupported by relevant legal authority.

¶ 25                              B. Substantial Change in Circumstances

¶ 26          Christopher argues the trial court erred in modifying his child support obligation because Amanda failed to establish a substantial change of circumstances sufficient to warrant the modification. Specifically, he contends Amanda's "unilateral enrollment of the minor child in private school" does not constitute a substantial change in circumstances. We disagree.

¶ 27          "The determination that there has been a substantial change in circumstances sufficient to warrant the modification of child support lies within the trial court's discretion and

- 8 -

will not be disturbed absent an abuse of discretion." *In re Marriage of Turrell*, 335 Ill. App. 3d 297, 307, 781 N.E.2d 430, 440 (2002); see also *In re Marriage of Bussey*, 108 Ill. 2d 286, 296, 483 N.E.2d 1229, 1233 (1985) ("The modification of child-support payments lies within the sound discretion of the trial court, and the trial court's modification will not be disturbed on appeal, absent an abuse of discretion."). "An abuse of discretion occurs when the trial court's ruling is fanciful, unreasonable, or when no reasonable person would adopt its view." *In re Dal. D.*, 2017 IL App (4th) 160893, ¶ 31, 74 N.E.3d 1185.

¶ 28        Under the Illinois Parentage Act of 2015, child support orders are "subject to modification *** only in accordance with Section 510 of the Illinois Marriage and Dissolution of Marriage Act." 750 ILCS 46/801(b) (West 2018). Section 510 provides a child support order may be modified "upon a showing of a substantial change in circumstances". 750 ILCS 5/510(a)(1) (West 2018). "A substantial change in circumstances typically means that the child's needs, the obligor parent's ability to pay, or both have changed since the entry of the most recent support order." *In re Marriage of Verhines*, 2018 IL App (2d) 171034, ¶ 79, 129 N.E.3d 181; see also *In re Marriage of Singleteary*, 293 Ill. App. 3d 25, 35, 687 N.E.2d 1080, 1087 (1997) ("The law is clear that only some change in circumstances *of any nature* that would justify equitable action by the court in the best interests of the child is required." (Emphasis in original.)). Accordingly, "[w]hen determining whether there is sufficient cause to modify, courts consider both the circumstances of the parents and the circumstances of the child." *In re Marriage of Lambdin*, 245 Ill. App. 3d 797, 806, 613 N.E.2d 1381, 1389 (1993). "An increase in the child's needs can be presumed on the basis that the child has grown older and the cost of living has risen. This increase in the child's needs is balanced against the relative abilities of the parents to provide for those needs." *People ex rel. Stokely v. Goodenow*, 221 Ill. App. 3d 802, 805, 583

N.E.2d 102, 104 (1991). However, "[c]hild support obligations may be increased pursuant to the Act based upon the supporting parent's increased ability to pay, regardless of whether the child's needs have also increased." *Lambdin*, 245 Ill. App. 3d at 806. "The burden of demonstrating such a substantial change in circumstances is on the party seeking the relief." *Singleteary*, 293 Ill. App. 3d at 34.

¶ 29        Here, the trial court did not abuse its discretion in determining a modification was warranted based on a significant change in circumstances. Christopher provides no support for his contention that the expenses associated with enrolling a minor child into a private school do not qualify as a significant change in circumstances. Further, Christopher cites no authority in support of his position that a unilateral change in schools was either not permitted by the language of the original decree or cannot contribute to a basis for a change of circumstances if found to be in the child's best interests.

¶ 30        Even if we accepted defendant's argument that expenses of enrollment in a private school did not constitute a "substantial change," the record does not show A.D.'s enrollment was the only evidence of a substantial change presented to or considered by the trial court. As noted above, the only account of the May 2019 trial proceedings comes from the trial court's docket entry. *Cf. Gulla*, 234 Ill. 2d at 422 ("[T]he court of review must presume the circuit court's order had a sufficient factual basis and that it conforms with the law."). At a minimum, the court's docket entry demonstrates the court heard testimony from Amanda regarding the change in circumstances and considered her testimony credible and persuasive, which is a judgment we will not overrule, especially when there is no other record upon which to rely. See *Best v. Best*, 223 Ill. 2d 342, 350-51, 860 N.E.2d 240, 245 (2006) ("A reviewing court will not substitute its judgment for that of the trial court regarding the credibility of witnesses,

the weight to be given to the evidence, or the inferences to be drawn."). The court's order also shows the court found a substantial change in circumstances because A.D.'s expenses had increased, which, in addition to Amanda's testimony, it could presume because almost four years had passed since the last modification in 2015 and A.D.'s needs had certainly changed during that time. The record further provides some evidence Christopher's income increased since, as indicated by his W-2, his gross income in 2018 was approximately $1290 per week, and his gross income in 2019 was approximately $1390 per week. Thus, there is no basis from the record to conclude the trial court abused its discretion in finding a substantial change in circumstances.

¶ 31                             C. Modification of Child Support

¶ 32        Christopher also argues the trial court erred in ordering him to pay one-half of the minor child's educational expenses because the court failed to properly modify his child support. Specifically, Christopher contends a modification cannot be granted without considering the factors to support a departure from the child support guidelines provided in section 505(a)(2) of the Illinois Marriage and Dissolution of Marriage Act (750 ILCS 5/505(a)(2) (West 2018)), and, since the court failed to consider all these factors, the modification was inappropriate. We disagree.

¶ 33        The question of whether trial courts must apply the factors provided in section 505(a)(2) in order to modify a party's child support obligation involves the interpretation of a statute, which is a question of law reviewed *de novo*. See *In re Marriage of Hundley*, 2019 IL App (4th) 180380, ¶ 108, 125 N.E.3d 509 ("Statutory interpretation is a question of law reviewed *de novo*."). When interpreting statutes, courts must "give effect to the intention of the legislature," which is best reflected in "the plain language of the statute." *In re Marriage of Rogers*, 213 Ill. 2d 129, 136, 820 N.E.2d 386, 390 (2004). "When the language of the statute is

- 11 -

clear, it must be applied as written without resort to aids or tools of interpretation." *In re Marriage of Turk*, 2014 IL 116730, ¶ 15, 12 N.E.3d 40.

¶ 34 When a trial court determines a substantial change in circumstances exists in "a proceeding for modification of a previous order for child support under Section 510 of this Act," the court must determine the parties' basic child support obligation. 750 ILCS 5/505(a) (West 2018); see also 750 ILCS 46/808 (West 2018) ("Any support judgment is subject to modification or termination only in accordance with Section 510 of the Illinois Marriage and Dissolution of Marriage Act."). There is a rebuttable presumption under section 505(a)(3.4) the child support guidelines are to be used when calculating child support payments pursuant to a modification. 750 ILCS 5/505(a)(3.4) (West 2018) ("In any action to establish or modify child support ***, the child support guidelines shall be used as a rebuttable presumption for the establishment or modification of the amount of child support."). Under section 505(a)(1.5), courts calculate the parties' basic support obligation by:

"(A) determin[ing] each parent's monthly net income;

(B) add[ing] the parents' monthly net incomes together to determine the combined monthly net income of the parents;

(C) select[ing] the corresponding appropriate amount from the schedule of basic child support based on the parties' combined monthly net income ***; and

(D) calculat[ing] each parent's percentage share of the basic child support obligation." 750 ILCS 5/505(a)(1.5) (West 2018).

¶ 35    In determining child support, a trial court is limited to the results of this calculation unless the court chooses to depart (750 ILCS 5/505(a)(2) (West 2018)) or deviate (750 ILCS 5/505(a)(3.4) (West 2018)) from applying the child support guidelines. To depart from the guidelines, the court must find the "application of the guidelines would be inappropriate, after considering the best interests of the child and evidence which shows relevant factors ***." 750 ILCS 5/505(a)(2) (West 2018). These "factors includ[e], but [are] not limited to, one or more of the following:

> (A) the financial resources and needs of the child;
>
> (B) the financial resources and needs of the parents;
>
> (C) the standard of living the child would have enjoyed had the marriage or civil union not been dissolved; and
>
> (D) the physical and emotional condition of the child and his or her educational needs." 750 ILCS 5/505(a)(2) (West 2018).

Similarly, if the court finds applying the guidelines "would be inequitable, unjust, or inappropriate[,]" the court may deviate from the guidelines after making written findings detailing the amount of support without the deviation and the court's "reasons for the deviation." 750 ILCS 5/505(a)(3.4) (West 2018); see also *Anderson v. Heckman*, 343 Ill. App. 3d 449, 453, 797 N.E.2d 1108, 1111 (2003) (stating "section 505 provides that the court 'shall state the amount of support that would have been required under the guidelines' and 'shall include the reason or reasons for the variance from the guidelines' "). These reasons may include the "extraordinary medical expenditures" needed to keep the child or parties alive, expenses resulting from the child's special needs, and, after considering the child's best interests, any other factor the court deems appropriate, such as the factors provided under section 505(a)(3.4).

750 ILCS 5/505(a)(3.4) (West 2018). Thus, only when courts choose to depart from the basic application of the guidelines is "[c]onsideration of the factors set forth in section 505 of the Act *** mandatory, not directory ***." (Internal quotation marks omitted.) *In re Parentage of I.I.*, 2016 IL App (1st) 160071, ¶ 56, 69 N.E.3d 402.

¶ 36    Accordingly, contrary to Christopher's assertions, there is no statutory requirement for courts to apply any factors when modifying child support presumptively with the use of the child support guidelines. Instead, courts must calculate the parties' basic support obligations pursuant to the procedure described in section 505(a)(1.5) (750 ILCS 5/505(a)(1.5) (West 2018)). No factors are needed to make that calculation, only the parent's monthly net incomes and the appropriate schedule of basic child support, which inherently take into consideration to a certain extent the parties' financial resources and obligations. See 750 ILCS 5/505(a)(1.5) (West 2018). As the statute specifies, factors are only taken into account when the court deems it appropriate to depart from the guidelines. However, even in such circumstances, the court need only consider factors relevant to the case and not, as Christopher suggests, all the factors listed in the statute.

¶ 37    Despite the statute's clear language, Christopher still maintains "the trial court must apply all of the factors *** to determine the modified amount of child support." This argument is based primarily on *Lambdin*, which directs courts to modify child support using "the same factors to consider in formulating the original amount" and describes the relevant factors as the child's financial resources, the resources and needs of the parents, "the standard of living the child would have enjoyed had the marriage not been dissolved," and the child's physical, emotional, and educational needs. *Lambdin*, 245 Ill. App. 3d at 806. However, this argument ignores the fact that section 510 of the Illinois Marriage and Dissolution of Marriage Act has

changed significantly since this court decided *Lambdin*. The version of the statute cited in *Lambdin,* and the precedent it relied on, in part stated that "[t]he party paying child support may show that the payment amounts were justified at the time of the previous support order and remain justified by other terms in the previous order or by other relevant factors specified in section 505." Ill. Rev. Stat. 1991, ch. 40, ¶ 510(b). In other words, the factors in section 505 were expressly mentioned in the statute as the basis upon which to justify either a modification or denial thereof. Unlike the statute today, section 510 was directly connected to the factors upon which a deviation could be justified as listed in section 505. This suggests the legislature at that time intended courts to consider those factors in modifying a party's child support obligation. However, without the same language or connection today, the statute's plain language now provides courts are to apply the relevant factors listed when they depart from the basic child support obligation, and although any consideration of the factors listed in section 505(a)(2) could arguably fall within the broad language of section 505(a)(3.4)(C), they are not required and, in fact, are not to be considered unless there is a deviation from the child support guidelines.

¶ 38        With this understanding of the process for modifying child support, the question is whether the trial court properly applied section 505 in determining Christopher's child support obligation.

¶ 39        " 'Child support is a matter within the sound discretion of the trial court, and this court will not disturb the trial court's determination absent an abuse of discretion.' [Citation.]" *In re Marriage of Berberet*, 2012 IL App (4th) 110749, ¶ 37, 974 N.E.2d 417 (quoting *In re Marriage of Deem*, 328 Ill. App. 3d 453, 457, 766 N.E.2d 661, 665 (2002). "It is always an abuse of discretion for a trial court to base a decision on an incorrect view of the law." *A&R Janitorial v. Pepper Construction Co*., 2018 IL 123220, ¶ 15, 124 N.E.3d 962.

¶ 40        In this case, there is no evidence the trial court abused its discretion. In setting

Christopher's child support obligation at $568.77 per month, the court appears to have relied

upon the calculation Christopher submitted to the court. A review of the calculation shows the

amount was determined in a manner consistent with section 505. The amount was reached by

determining the parties' incomes, adding their incomes together, and, using the appropriate

schedule, calculating each parties' share of child support. See 750 ILCS 5/505(a)(1.5) (West

2018). The calculation also included an appropriate adjustment for the parties' other children.

See 750 ILCS 5/505(a)(3)(F)(I) (West 2018) (allowing a multifamily adjustment for a parent

"also legally responsible for support of a child not shared with the other parent and not subject to

the present proceeding"). Nothing suggests the amount ordered was arbitrary or unreasonable.

Additionally, for the reasons described below, there is no evidence the court departed or deviated

from the child support guidelines. As a result, the court appropriately did not consider any other

factors in reaching its decision. Thus, the trial court properly, and within its discretion, modified

Christopher's child support obligation pursuant to the child support guidelines.

¶ 41                              D. Educational Expenses

¶ 42        Christopher argues the trial court abused its discretion by incorrectly deviating

from the child support guidelines by requiring him to pay one-half of A.D.'s educational

expenses and, since the court did not make factual findings to support the deviation as prescribed

by statute, the trial court abused its discretion. We disagree.

¶ 43        The question of whether an order requiring a parent to contribute to his child's

educational expenses is a deviation from the child support guidelines, thus necessitating specific

written findings, first requires this court to interpret the Illinois Marriage and Dissolution of

Marriage Act. As noted above, "[s]tatutory interpretation is a question of law reviewed *de novo*." *Hundley*, 2019 IL App (4th) 180380, ¶ 108.

¶ 44        "The duty of support owed to a child includes the obligation to provide for the reasonable and necessary physical, mental and emotional health needs of the child." 750 ILCS 5/505(a) (West 2018); see also *In re Marriage of Benyon*, 2019 IL App (3d) 180364, ¶ 10, 127 N.E.3d 1151 ("Both parents have a responsibility to support their child, which includes the duty to provide for the reasonable and necessary physical, mental, emotional, and financial support."). As we said above, a parent's basic child support obligation is assessed by determining both parents' monthly incomes, adding their incomes together, selecting the appropriate amount from the appropriate schedule based on the parties' combined income, and then calculating each parent's share of support. 750 ILCS 5/505(a)(1.5) (West 2018). There is a rebuttable presumption the amount of child support reached from applying this calculation "is the correct amount of child support." 750 ILCS 5/505(a)(3.3) (West 2018); see also *In re Marriage of Pratt*, 2014 IL App (1st) 130465, ¶ 28, 17 N.E.3d 678 ("The guidelines create a rebuttable presumption that child support conforming to the guidelines is appropriate."). However, a trial court "may deviate from the child support guidelines if the application would be inequitable, unjust, or inappropriate." 750 ILCS 5/505(a)(3.4) (West 2018); see also *In re Tate Oliver B.*, 2016 IL App (2d) 151136, ¶ 44, 52 N.E.3d 351 ("Section 505(a) also requires that the guidelines be used unless the trial court finds that a deviation is warranted."). A court making a deviation must make "written findings *** specifying the reasons for the deviation and the presumed amount under the child support guidelines without a deviation." 750 ILCS 5/505(a)(3.4) (West 2018); see also *Anderson*, 343 Ill. App. 3d at 453. Further, "[t]he court, in its discretion, *in addition to* the basic child support obligation, may order either or both parents owing a duty of support to the

child to contribute to the reasonable school and extracurricular activity expenses incurred which are intended to enhance the educational, athletic, social, or cultural development of the child." (Emphasis added.) 750 ILCS 5/505(a)(3.6) (West 2018).

¶ 45       A trial court ordinarily must make certain written findings when the court declines to order a parent to pay the basic child support obligation amount. *Cf.* 750 ILCS 5/505(a)(3.4) (West 2018). However, the plain meaning of section 505(a)(3.6), aptly titled "Extracurricular activities *and school expenses*" (emphasis added), indicates an order requiring a parent to pay for the child's educational or extracurricular expenses on top of the basic child support obligation is not a deviation governed by section 505(a)(3.4). 750 ILCS 5/505(a)(3.6) (West 2018). Section 505(a)(3.6) expressly allows courts to make the contribution for such expenses *in addition to* the basic child support obligation, not as part of the parent's basic support obligation. 750 ILCS 5/505(a)(3.6) (West 2018). This demonstrates the legislature's intent to allow the courts to treat contributions for educational expenses as distinct from a deviation. Further, unlike section 505(a)(3.4), section 505(a)(3.6) does not require courts to first determine whether the basic child support guidelines are "inequitable, unjust, or inappropriate." See 750 ILCS 505(a)(3.4) (West 2018); 750 ILCS 505(a)(3.6) (West 2018). Instead, section 505(a)(3.6) expressly gives the courts discretion to examine the child's educational and extracurricular activities in a practical way and ensure the expenses associated with these activities are not borne inequitably by one parent, which is in line with the statute's purpose of ensuring more equitable and consistent treatment of parents. 750 ILCS 505(a)(3.6) (West 2018); see also 750 ILCS 505(a)(1) (West 2018). Additionally, the court's discretion is restrained by the parent's ability to pay and limiting the parent's contribution to reasonable expenses. See 750 ILCS 505(a)(1) (West 2018); 750 ILCS 505(a)(3.6) (West 2018).

¶ 46 Here, the trial court's order requiring Christopher to pay one-half of A.D.'s educational expenses was not a deviation from the basic child support obligation. The court's docket entry and order show the court ordered Christopher to pay $568.77 per month. In addition to his basic support obligation, the court also ordered him to pay one-half of A.D.'s expenses to attend private school. The record does not show the trial court at any time considered the application of the child support guidelines inappropriate, which means the court was ordering Christopher to contribute to A.D.'s educational expenses pursuant to section 505(a)(3.6). Thus, the court committed no error in failing to make specific written findings required for a deviation from the child support guidelines.

¶ 47 As a result, the question becomes whether the trial court abused its discretion in ordering Christopher to pay half of A.D.'s private school expenses. Christopher argues the trial court abused its discretion by failing to consider the financial disparities between the parties' households and ordering him to pay more than what he can afford. We disagree.

¶ 48 "Whether to order a parent to pay a portion of a minor child's educational expenses is a matter within the discretion of the trial court. [Citation.] *** [W]e will reverse the court's decision only if we find that it constituted an abuse of that discretion." *In re Marriage of Hamilton*, 2019 IL App (5th) 170295, ¶ 113, 128 N.E.3d 1237. The court "may order either or both parents owing a duty of support to the child to contribute to the reasonable school and extracurricular activity expenses incurred which are intended to enhance the educational, athletic, social, or cultural development of the child." 750 ILCS 505(a)(3.6) (West 2018); *In re Marriage of Salvatore*, 2019 IL App (2d) 180425, ¶ 18, 124 N.E.3d 1136 ("[C]ourts are now authorized to 'order either or both parents owing a duty of support to a child of the marriage or civil union to pay an amount reasonable and necessary for support.' "). The reasonable expenses

must also be balanced with "the ability of the parents to pay." See 750 ILCS 505(a)(1)(A) (West 2018). Further, "[t]he financial status of a divorced parent's current spouse should not be considered in determining the ability of that parent to fulfill his or her duty of support." *In re Marriage of Mitteer*, 241 Ill. App. 3d 217, 227, 608 N.E.2d 607, 614 (1993). However, the court may consider the current spouse's income to "determine whether the payment of child support would endanger the ability of the support-paying [parent] and that [parent's] current spouse to meet their needs." *In re Marriage of Keown*, 225 Ill. App. 3d 808, 813, 587 N.E.2d 644, 647 (1992).

¶ 49     Here, there is no evidence in the record suggesting the trial court abused its discretion. Although Christopher now attempts to claim "his family could not afford the additional expense," he did not previously make this assertion and nothing in the record shows he lacks the ability to pay half of the educational expenses. In fact, rather than demonstrating he could not afford to pay half of the expenses, the exhibit Christopher cites states "money is not [his] reasoning" for objecting to A.D. attending a private school.

¶ 50     Instead, the trial court had ample information to determine each party's ability to contribute to A.D.'s educational expenses. Both parties submitted financial affidavits outlining their income, expenses, and debts. As the court's docket entry and order reflect, the court reviewed this information in rendering its decision and particularly noted Christopher had less debt than Amanda. It was reasonable for the court to assume this would impact each party's ability to contribute to A.D.'s educational expenses. Further, in noting how much Amanda and Christopher's spouses earn and their spouses' contributions to household expenses, the court appears to have considered the effect a contribution toward A.D.'s educational expenses would have on each families' financial needs. Given Amanda had less disposable income due to having

more expenses and debts than Christopher, it would have been reasonable to assume requiring her to pay more would have negatively impacted her family's financial needs. Similarly, the fact her household's combined income exceeds that of Christopher's household would not preclude the court from reasonably concluding Christopher still had the ability to pay half of the educational expenses. Since neither the affidavits nor the remainder of the record substantiate Christopher's claim he lacks the ability to pay, the court did not abuse its discretion.

¶ 51 Christopher also contends a private school education is unreasonable because the public education A.D. previously received was sufficient to meet her needs and cites *People ex rel. Sussen v. Keller*, 382 Ill. App. 3d 872, 892 N.E.2d 11 (2008), in support his of contention. However, as the Fifth District recently described in *Hamilton*, *Sussen* involved a parent's contribution toward postsecondary educational expenses, which is distinguishable from a minor child's right to have an adequate education. *Hamilton*, 2019 IL App (5th) 170295, ¶¶ 114-15. Additionally, the trial court here heard testimony and expressly found it was in A.D.'s best interests to attend a private school, particularly as she had experienced "problems and issues" at her public school. In the absence of an adequate record, we see nothing to contradict the court's findings. Accordingly, the trial court did not abuse its discretion in ordering Christopher to pay half of A.D.'s educational expenses.

¶ 52                                    III. CONCLUSION

¶ 53            For the reasons stated, we affirm the trial court's judgment.

¶ 54            Affirmed.